OPINION OF THE COURT
Jeffrey S. Sunshine, J.
Introduction
This court is called upon, inter alia, to determine if the. new mandatory pendente lite maintenance guidelines and pendente lite counsel fee statutes enacted by the legislature should be deviated from where the calculations will result in the payee spouse having more monies available than the payor spouse as a result of the calculation. The court must also determine if the shift in financial resources that results from the guideline calculation rebuts the presumption of the payor spouse being the “monied” spouse.
The plaintiff husband, Scott M., moves by order to show cause dated October 18, 2010, for an order seeking: (1) pendente lite custody of the infant son (name omitted); (2) immediate supervised drug testing; (3) to turn over to plaintiff the sum of $9,000 which was wrongfully taken from the parties’ joint account so that plaintiff may discharge a present and pressing matrimonial obligation; and (4) for such other and further relief as the court may deem just and proper. The defendant wife, *355 Ilona M., moves by cross motion dated October 26, 2010, for an order granting pendente lite custody, child support, maintenance, attorney’s fees, and for such other and further relief as the court may deem just and proper. The matter was orally argued on December 16, 2010.
Background
The parties were married in a civil ceremony in Arlington, Virginia in June of 2000. There is one child of the marriage who is three years of age. The husband commenced this action on October 15, 2010. The husband is 44 years of age, and is currently employed as a vice-president of a major financial institution. The wife is 34 years of age and currently employed as a production assistant.
The parties previously resided in Virginia before moving to New York. The parties met through an on-line dating service. The husband traveled to Saint Petersburg, Russia to meet the wife. The wife emigrated to the United States in April 2000 on a “K-l” visa (for a fiancée) and became a United States citizen in 2006. The wife’s mother also emigrated to the United States and appears to be the source of much of the husband’s concerns relating to her care of the parties’ child and his reports of an obsessive compulsion with cleanliness and hand washing. The husband expresses grave concerns about the wife’s use of the drug “ecstacy” for which she tested positive in a court-ordered drug test. The husband alleges her use of the drug escalated in the spring of 2010 and continues to increase at an alarming rate. The husband admits to having known of the defendant’s use of ecstacy.
The wife contends that the husband uses the drug cocaine which he vehemently denies. The husband tested negative in a court-ordered drug test. There is an active investigation with the New York City Administration for Children’s Services which conducted an investigation and issued a report on December 1, 2010. The child resides with the mother and the father has extensive parenting time. The father resides in the former marital apartment. An attorney has been appointed for the child.[1] The husband and wife each seek custody of the child. The husband avers that his employment will allow him to spend substantial time at home with the child. There is a day care provider which is paid over $1,700 each month at a substantial *356 cost to the husband. The husband alleges that he is contractually obligated to pay for the child care and the wife has not contributed to the costs.
Legislative History
As a result of dissatisfaction with pendente lite maintenance and counsel fee awards, the legislature, effective October 12, 2010, requires that courts conduct a formula approach to the calculation of temporary maintenance awards. The statutory requirement does not apply to final awards and is subject to review after a report by the Law Revision Commission no later than December 31, 2011.[2] In support of the legislation the sponsor noted:
*357 “PURPOSE OF BILL:
“To take steps toward reforming the state’s spousal maintenance awards by providing consistency and predictability in calculating temporary spousal maintenance awards, revising the state’s laws on final maintenance awards by incorporating factors that reflect the experiences of divorcing couples, and directing a review of our maintenance laws and the economic consequences of divorce to enable the legislature to improve the effectiveness of these laws” (Mem in Support of 2010 NY Assembly Bill A10984B, enacted as L 2010, ch 371).
The legislation established 19 factors for a court to consider as a deviation. The court has performed a number of calculations outlined below in order to explain the options and consequences of the calculation (see Domestic Relations Law § 236 [B] [5-a]).
Calculation I
Gross Income Calculation for Support Purposes
For purposes of both child support and maintenance calculations, annual income is defined as gross income less FICA and New York City taxes, thus the following calculations result in the parties’ annual income calculation as follows:* *[3]
Husband Wife
Gross Income: $155,590.00 Gross Income: $33,705.36
FICA and Medicare:4 -$6,466.58 FICA and Medicare: -$2,089.7[4]
New York City tax: -$5,445.65 New York City tax: -$1,179.69
Total Income:[5] $143,677.77 $30,435.93
*358 Calculation II
Mandatory Pendente Lite Maintenance Calculation Pursuant to the Statute
Calculation A: 30% of payor’s income minus 20% of payee’s income
(a) payor’s income $143,677.77 x .3
30% of payor’s income $43,103.33
(b) payee’s income $ 30,435.93 x .2
20% of payee’s income $6,087.19
(c) 30% of payor’s income $43,103.33
20% of payee’s income -$6,087.19
Calculation A Total $37,016.14
Calculation B: 40% of combined income minus payee’s income
(a) husband’s income $143,677.77
wife’s income +$30,435.93
Combined income $174,113.70
(b) combined income $174,113.70 x .4
40% of combined income $ 69,645.48
(c) combined income $69,645.48
payee’s income -$30,435.93
Calculation B total $39,209.55
The guideline amount is the lesser of calculation A and calculation B or zero if calculation B zero: is less than or equal to
Calculation A: $37,016.14
Calculation B: $39,209.55
Guideline Amount: $ 37,016.14
*359 Low Income Calculation
If the guideline amount reduces the payor’s income below the self-support reserve (in 2010 it was $14,620), then the award is the payor’s income minus the self-support reserve. If the low income award equals zero, there is no adjustment for low income.
payor’s income: $143,677.77
guideline amount: -$ 37,016.14
$106,661.63
The guideline amount does not reduce the payor’s income below the self-support reserve; accordingly, there is no low income adjustment herein.
The payee spouse is entitled to the lower of the above two resulting figures, absent any finding that the presumptive amount would be unjust or inappropriate based on the factors delineated in Domestic Relations Law § 236 (B) (5-a) (e) (1). The factors include the age and health of the parties, their earning capacity, a party’s care of children or other family members that inhibits his or her earning capacity, the need of a party to pay for exceptional additional expenses for the parties’ children, the contributions of the party seeking temporary maintenance to the marriage, the existence and duration of a premarital joint household or a predivorce separate household, and any other factor that the court finds to be just and proper.
Calculation III
Pendente Lite Child Support Maintenance Deviation on Total Combined Income (No Child Support Cap)
If the court were to utilize the new maintenance guidelines and not deviate, the calculation would be as follows: The husband’s income is $155,590 less FICA $6,466.58, New York City local tax $5,445.65 and maintenance $37,016.14. The husband’s income for child support purposes is $106,661.63. The wife’s annual income is $33,705.36 less FICA $2,089.74 and New York City tax $1,179.69. The wife’s income for child support purposes is $30,435.93.[6] The combined parental income is $106,661.63 + $30,435.93 = $137,097.56. In accordance with *360 CSSA 17% of the total combined parental income is $23,306.58. Accordingly, the husband’s pro rata share (77.80%) for child support would be $18,132.51 annually, which is $1,511.04 each month. Statutory add-on expenses, such as day care and unreimbursed medical expenses for the child would also be paid on a pro rata basis; the husband’s pro rata obligation under this scenario would be 77.80% and the wife’s pro rata obligation is 22.20%.
Calculation IV
Pendente Lite Child Support Utilizing Child Support Cap of $130,000
Effective January 31, 2010 (see Domestic Relations Law § 240 [1-b] [c] [2]), the legislature raised the cap on mandatory child support from $80,000 to $130,000 of combined parental income. Thus, if the child support is calculated on the combined parental income of $130,000 at 17% for one child, the combined child support would be a total of $22,100. At a pro rata share of 77.80% for the husband and 22.20% for the wife, the husband’s child support obligation would be $17,193.80 per year and the wife’s child support obligation would be $4,906.20. Pursuant to Matter of Cassano v Cassano (85 NY2d 649 [1995]), the court must articulate the reasons for an amount of support directly attributed to child support in excess of the now $130,000 cap. In the case at bar, the lifestyle of the parties is being met by the combined maintenance and child support award. Here, even if the court deviated from the mandatory maintenance guidelines, the amount of support attributed to the father of $17,193.80, together with the other add-on expenses and the maintenance, would not warrant the court to exceed the child support $130,000 cap pendente lite.
Add-on Expenses
The court is aware that there are substantial add-on expenses including the payment of $1,700 per month in child care. The wife at oral argument claimed that the husband has no obligation to continue the child in such an expensive child care ar *361 rangement and that she would be willing to contribute toward that expense of child care. The husband claims he is contractually obligated to make these payments. These are mandatory add-on expenses because the parties are employed and child care is thus a mandatory expenditure. (See Domestic Relations Law § 240 [1-b] [c]; Matter of Wallin v Wallin, 53 AD3d 663 [2d Dept 2008].)
Calculation V
Analysis of the Effect of Mandatory Pendente Lite Maintenance and Basis for a Deviation
The new statute poses significant challenges for courts. It dramatically changes the philosophy and purposes of pendente lite support. No longer is the standard to tide over the “more” needy spouse (see Yecies v Yecies, 108 AD2d 813 [2d Dept 1985]; Valente v Valente, 269 AD2d 389 [2d Dept 2000]; Iannone v Iannone, 31 AD3d 713, 714 [2d Dept 2006] [the purpose of a pendente lite award is to “ ‘tide over the more needy party, not to determine the correct ultimate distribution’ ”]). The standard is a shift in resources pretrial by automatic calculation. The bases for the majority of deviations enunciated in the statute are difficult to determine pretrial and prediscovery. At the earliest stage of the litigation (pendente lite) the court is required to consider factors some of which can only be established after a full trial and/or extensive discovery. In accordance with Domestic Relations Law § 236 (B) (5-a) (e) (1),
“[t]he court shall order the presumptive award of temporary maintenance in accordance with paragraphs c and d of this subdivision, unless the court finds that the presumptive award is unjust or inappropriate and adjusts the presumptive award of temporary maintenance accordingly based upon consideration of the following factors:
“(a) the standard of living of the parties established during the marriage;
“(b) the age and health of the parties;
“(c) the earning capacity of the parties;
“(d) the need of one party to incur education or training expenses;
“(e) the wasteful dissipation of marital property;
“(f) the transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
*362 “(g) the existence and duration of a pre-marital joint household or a pre-divorce separate household;
“(h) acts by one party against another that have inhibited or continue to inhibit a party’s earning capacity or ability to obtain meaningful employment. Such acts include but are not limited to acts of domestic violence as provided in section four hundred fifty-nine-a of the social services law;
“(i) the availability and cost of medical insurance for the parties;
“(j) the care of the children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws that has inhibited or continues to inhibit a party’s earning capacity or ability to obtain meaningful employment;
“(k) the inability of one party to obtain meaningful employment due to age or absence from the workforce;
“(Z) the need to pay for exceptional additional expenses for the child or children, including, but not limited to, schooling, day care and medical treatment;
“(m) the tax consequences to each party;
“(n) marital property subject to distribution pursuant to subdivision five of this part;
“(o) the reduced or lost earning capacity of the party seeking temporary maintenance as a result of having foregone or delayed education, training, employment or career opportunities during the marriage;
“(p) the contributions and services of the party seeking temporary maintenance as a spouse, parent, wage earner and homemaker and to the career or career potential of the other party; and
“(q) any other factor which the court shall expressly find to be just and proper.”
After considering the statutory factors, the court finds in the case at bar that the presumptive amount of temporary maintenance of $37,016.14 (which is $3,097 per month) would be unjust and inappropriate because (1) the court must consider the existence and duration of the predivorce joint household of both parties and (2) the child care expense obligation of the parties. This determination cannot be made in a vacuum. In the case at bar and under the formula enunciated by the recent legislation, the shift in resources from the payor spouse to the *363 payee spouse results in the payor spouse having a substantial reduction in resources and thus cannot maintain his preseparation household. Here, the legislation specifically provides that the existence of a predivorce household be considered. The statute does not articulate only the payee spouse’s household. The court does not believe the factor delineated in clause (q), “any other factor which the court shall expressly find to be just and proper,” allows a blanket rejection of the calculation because it is simply too much money. The financial resource shift, in and of itself, is not a basis for the court to rewrite the intent of the statute. The legislature did not articulate a factor that would permit the court, as an act of equity, to simply readjust the calculation. The language unjust or inappropriate does not stand alone. The factor delineated in clause (q) (“any other factor which the court shall expressly find to be just and proper”) cannot be used in isolation from the rest of the statute to support a finding of an unjust or inappropriate presumptive amount merely because the formula may shift resources from one party to the other. While the category may appear on its face to invite a deviation based upon a resource shift, the legislative intent of the statute is consistency in maintenance awards. Granting a deviation just because there is a resource shift would be inconsistent with the statutory intent. The economic intent of the statute clearly is to shift resources. Of course, how dramatic of a shift depends on the incomes and resulting financial resources of the parties. In order to maintain the predivorce or preseparation household for both parties herein, there must be excess resources available that were not utilized previously. The cost to the plaintiff of the predivorce household rent alone is $25,200 a year. There is no reason he should be forced to move pendente lite especially where the issue of custody is unresolved. (See Dornbusch v Dornbusch, 110 AD2d 808 [2d Dept 1985] [in an initial custody battle, there is no presumption in favor of either parent].) Simple mathematics and common sense dictate that it costs more to maintain two households than one. Here, there is no indication that the parties had resources that were not utilized. In fact, notwithstanding substantial income, the parties were having difficulty meeting their expenses. Nor can it be said at this juncture that the husband or wife has purposefully diminished his or her income. The role of the court in this case is to devise an award that will consider the existence of a predivorce household (factor delineated in clause [g]). The court must also consider the substantial child care obligations (factor delineated in clause [Z]).
*364 If the court did not deviate from the maintenance guidelines, the economic analysis would be the husband’s resources, for pendente lite purposes, of $143,677.77 (income), less the pendente lite maintenance award of $37,016.14, less his annual child support obligation (up to $130,000 in combined income) of $17,193.80, thus leaving the husband’s resources reduced to $89,467.83. When you take this into account with his federal tax obligation of $24,553.80 and his state tax obligation of $9,644.06 (his New York City tax and FICA were already deducted pursuant to the formula) his available resources with these payments would be $55,269.97.[7] If you were to deduct his 77.80% pro rata share of the $1,700 child care per month or $20,400 per year under this scenario, his available resources would be further reduced an additional $15,871.20 to $39,398.77 per year to meet all of his expenses.
The wife’s resources, for pendente lite purposes, of $30,435.93 (income) plus the pendente lite maintenance award in accordance with the formula would be $37,016.14 plus the child support award of $17,193.80 less the wife’s federal tax obligation of $730.08 and her state tax obligation of $1,077.44 leave her with annual resources of $82,83.35.[8] If you deduct her pro rata share of child care, it would be further reduced to 22.20% of $20,400, which equals $4,528.80, which would leave her and the child with available resources of $78,309.55.
Expenses
Pursuant to the husband’s affidavit of net worth dated October 6, 2010, his monthly expenses are: (1) rent $2,100; (2) utilities $620; (3) food $400; (4) clothing $200; (5) laundry $80; (6) dry cleaning $200; (7) medical $50; (8) therapy $800; (9) household maintenance $55; (10) household help $800; (11) day care $1,700; (12) recreation $830; and (13) miscellaneous $350. The husband’s total expenses are $8,185.00.[9]
*365 Pursuant to the wife’s affidavit of net worth dated November 1, 2010, her monthly expenses are: (1) rent $1,150; (2) utilities $230; (3) food $900; (4) clothing $400; (5) laundry $100; (6) household maintenance $100; (7) day care $1,700.00[10]; (8) recreation $261.28; (9) miscellaneous $390; (10) lawyer $400; (11) child’s diapers and wipes $200; and (12) child’s toys $200. The wife’s total expenses are $6,031.28.
As such, the court recognizing that the purpose of a pendente lite award is no longer to “tide over the more needy party,” does deviate and determines that temporary maintenance in the amount of $24,667.42 per annum pendente lite implements the intent and language of the new law as presently written. The court deviates in order for the plaintiff to meet his predivorce household expenses and taking into account the parties expenses, child care costs and net available resources. This calculation reduces the mandatory calculation of $37,016.14 by one third to $24,677.42. The court further finds that the child support calculation in the amount in excess of the $130,000 cap in combined pro rata income for purposes of child support is not warranted herein, given the total combined child support and maintenance awarded pendente lite.
Calculation of Support
Thus, the court determines the following calculation:
Husband Wife
Gross Income: $155,590.00 Gross Income: $33,705.36
Less FICA + Medicare: -$6,466.58 Less FICA+ Medicare: -$2,089.74
Less New York City tax: -$5,445.65 Less New York City tax: -$1,179.69
Less Maintenance: -$24,677.42 $30,435.93
Total Gross: $119,000.35
(For Child Support)
*366 The husband’s total gross for child support calculation is $119,000.35 and the wife’s total gross for child support calculation is $30,435.93. The parties’ combined parental income (with no cap) would be $149,436.28 multiplied (one child) by 17%, equals $25,404.16. The husband’s pro rata share of 79.60% would be $20,221.71. The wife’s pro rata share of 20.40% would be $5,182.44. The court finds child support (given the amount of maintenance, the predivorce standard of living and amount of resources each party is left with) utilizing combined parental income cap of $130,000 multiplied by 17%, equals $22,100 is more appropriate. The husband’s pro rata share (79.60%) equals $17,591. The wife’s pro rata share (20.40%) equals $4,508.40.
The child care of $1,700 monthly ($20,400 annually) shall also be paid on a pro rata share basis by the parties: 79.60% by the husband ($16,238.40) and 20.40% by the wife ($4,161.60). Similarly, the parties shall share the cost of any unreimbursed medical, dental or optical costs on the same pro rata basis pendente lite. The husband shall continue to cover the wife and child on his existing health insurance. All life insurance policies shall remain in full force and effect. Thus, the child support of $17,591 per year equals $338.28 per week and the maintenance of $24,677.42 per year equals $474.56 per week for a combined support order of $42,268.
The husband will then have net available resources of $50,973 and the wife and the three-year-old child will have net available resources of $66,735.23. These resource sums are calculated as follows:
Husband
Gross Income $155,590.00
Less FICA and Medicare -$6,466.58
Less New York City Taxes -$5,445.65
Less Federal Taxes -$24,553.80
Less State Taxes -$9,644.06
Less Payment of Maintenance -$24,677.42
Plus payment of Maintenance 0
Less Child Support -$17,591.00
Less Pro Rata share of Child Care -$16,238.40
Balance of Resources Available $50,973.09
*367 Wife and Three-Year-Old Child
Gross Income $33,705.36
Less FICA and Medicare -$2,089.74
Less New York City Taxes -$1,179.69
Less Federal Taxes -$730.08
Less State Taxes -$1,077.44
Plus payment of Maintenance +$24,677.42
Plus Child Support +$17,591.00
Less Pro Rata share of Child Care -$4,161.60
Balance of Resources Available $66,735.23
Interim Counsel Fee Award
The wife requests an award of interim counsel fees in the amount of $10,000. The legislation also changes the methodology for the ordering of counsel fees pendente lite. Domestic Relations Law § 237 (a) has been amended to provide that
“[t]here shall be rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court’s discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding. Applications for the award of fees and expenses may be made at any time or times prior to final judgment. Both parties to the action or proceeding and their respective attorneys, shall file an affidavit with the court detailing the financial agreement between the party and the attorney. Such affidavit shall include the amount of any retainer, the amounts paid and still owing thereunder, the hourly amount charged by the attorney, the amounts paid, or to be paid, any experts, and any additional costs, disbursements or expenses. Any applications for fees and expenses may be maintained by the attorney for either spouse in his own name in the same proceeding. Payment of any retainer fees to the attorney for the petitioning party shall not preclude any awards of fees and expenses to an applicant which would otherwise be allowed under this section.”
The sponsor of the bill in the Senate noted:
*368 “JUSTIFICATION:
“This bill would amend sections 237 and 238 of the Domestic Relations Law to require the court in a matrimonial case, or a proceeding to enforce a judgment therein, involving parties with greatly unequal financial resources, to order the monied party to pay counsel fees for the non-monied party during the course of the case so as to enable her or him to carry on or defend it. Current law places an onus upon the party in a matrimonial action seeking counsel fees pendente lite, to show why the interests of justice require it. In addition, Judges appear reluctant to order pendente lite counsel fee awards in matrimonial actions under the current statute. A judicial order for pendente lite counsel awards in a matrimonial proceeding is a vital step in preventing an imbalance in the parties’ resources from affecting the proceeding’s outcome. Given the importance of pendente lite counsel fees, and the frequency of financial imbalance between parties to matrimonial proceedings, it is inappropriate to place the burden upon a non-monied spouse to justify it. Therefore, it is important for the Legislature to revise the statute, as proposed, to create a rebuttable presumption that such relief is necessary. This bill proposal presumes that in a matrimonial case an order for pendente lite counsel fees is required, and it is left to the affected parties to show why, in the interests of justice, the order should not be made. This will better address today’s economic and social realities, and will help ensure that no party to a matrimonial case is strategically at a disadvantage for want of resources to pursue or defend the case” (Mem in Support of NY Senate Bill S4532A, enacted as L 2010, ch 329).
In this case, the husband earns $155,590 and the wife earns $33,705.36. The husband is the monied spouse. In accordance with the new statutory scheme there is a rebuttable presumption that counsel fees shall be awarded to the less monied spouse, the wife. However, based upon the temporary maintenance and child support award, even with the deviation, you can no longer consider the husband as a “monied spouse.” As stated herein, even with the deviation, there is a substantial shift in actual financial resources. This court is cognizant that the award of temporary maintenance very well may have future *369 tax implications for each of the parties but this court can only consider that which is before it at this time. These tax benefits will not be realized, if at all, until at the very earliest 2012.
The husband’s affidavit states that his attorney’s retainer amount was $3,500. The husband’s counsel’s hourly rate is $300.
The wife’s retainer was in the amount of $4,800. Through November 5, 2010, the wife’s counsel billed $7,955. There remains a balance due and owing in the amount of $1,987.50. The wife’s counsel’s hourly rate was initially $395; however, counsel (after the rate for legal assistants and paralegals were questioned by the wife’s attorneys) stated that he entered into a new retainer agreement with the wife wherein he reduced the hourly rate to $245 retroactively to the commencement of the action. Accordingly, the wife is awarded interim counsel fees in the amount of $5,000.
The reallocation of financial resources articulated herein shift the burden from the husband from being considered the monied spouse and as such rebuts the presumption. There is no doubt that the plaintiff earns more than the defendant does, and there is a disparity in gross income, but under the financial shift as a result of the mandatory Child Support Standards Act and maintenance guidelines, even with the maintenance deviation of one third the defendant will have more available resources for her and the child than plaintiff will. Of course, the support requirement of two individuals as compared to the support of one cannot go unnoticed, nor will the court consider child support as income. Yet, the court cannot decide that just because one party “earns more” than the other that he or she automatically becomes the “monied spouse.” Here, it is clear that the husband has not paid his attorneys themselves a sufficient sum of money for the amount of litigation involved. They may or may not have their reasons; that though should not bind the defendant wife to find attorneys equally as benevolent as the plaintiffs attorneys.
Even before the recent legislation, it was well established under Domestic Relations Law § 237 (a) that an attorney’s fee award “ ‘is a matter within the sound discretion of the trial court, and the issue “is controlled by the equities and circumstances of each particular case” ’ ” (Grant v Grant, 71 AD3d 634, 635 [2010], quoting Gruppuso v Caridi, 66 AD3d 838, 839 [2d Dept 2009], quoting Morrissey v Morrissey, 259 AD2d 472, 473 [2d Dept 1999]). “In determining whether to *370 award such a fee, the court should ‘review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties’ positions’ ” (Gruppuso, 66 AD3d at 839, quoting DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). Further, “ ‘[a]n appropriate award of attorney’s fees should take into account the parties’ ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, and the reasonableness of the fees under all of the circumstances’ ” (DiBlasi v DiBlasi, 48 AD3d 403, 405 [2d Dept 2008], lv denied 10 NY3d 716 [2008], quoting Grumet v Grumet, 37 AD3d 534, 536 [2d Dept 2007]).
It is also well settled that “[a]n award of interim counsel fees is designed to create parity in divorce litigation by preventing a monied spouse from wearing down a nonmonied spouse on the basis of sheer financial strength” (Rosenbaum v Rosenbaum, 55 AD3d 713, 714 [2d Dept 2008], citing O’Shea v O’Shea, 93 NY2d 187, 193 [1999]; Wald v Wald, 44 AD3d 848 [2d Dept 2007]). Stated differently, “[s]uch awards are ‘ “designed to redress the economic disparity between the monied spouse and the non-monied spouse” and ensure that “the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant’s wallet” ’ ” (Kaplan v Kaplan, 28 AD3d 523, 523 [2d Dept 2006], quoting Frankel v Frankel, 2 NY3d 601, 607 [2004], quoting O’Shea, 93 NY2d at 190). Further:
“Such an award ‘is appropriate “to prevent the more affluent spouse from wearing down or financially punishing the opposition by recalcitrance, or by prolonging the litigation” ’ (Gober v Gober, 282 AD2d 392, 393 [2001], quoting O’Shea v O’Shea, 93 NY2d at 193; see Charpié v Charpié, 271 AD2d 169 [2000]). If the playing field were not leveled by an award of interim counsel fees, ‘a wealthy husband could obtain the services of highly paid (and presumably seasoned and superior) matrimonial counsel, while the indigent wife, essentially, would be relegated to counsel willing to take her case on a poverty basis’ (Sassower v Barone, 85 AD2d 81, 89 [1982]).
“In Frankel v Frankel (2 NY3d 601 [2004]), the Court of Appeals recognized that ‘the realities of contentious matrimonial litigation require a regular infusion of funds,’ and that ‘more frequent interim counsel fee awards would prevent accumulation of *371 bills’ (id. at 607, 605 n 1).” (Prichep v Prichep, 52 AD3d 61, 65 [2d Dept 2008].)
The Appellate Division, Second Department, therefore held that
“an award of interim counsel fees to the nonmonied spouse will generally be warranted where there is a significant disparity in the financial circumstances of the parties. Accordingly, courts should not defer requests for interim counsel fees to the trial court, and should normally exercise their discretion to grant such a request made by the nonmonied spouse, in the absence of good cause” (Prichep v Prichep, 52 AD3d at 65 [citations omitted; emphasis added]).
While the purpose of counsel fees is to make sure that the monied spouse does not control by the power of the pocketbook or wallet, the court must realistically assess the available resources to each party as a result of the litigation. The court must leave the payor spouse with funds sufficient to meet their daily living expenses. As such, counsel fees are awarded to the defendant’s counsel in the amount of $5,000 to be paid within 30 days from the date of this decision and order. If plaintiff fails to make payment, the defendant may enter judgment with the clerk of the court without the need for further judicial intervention for said sum together with costs and interest upon 10 days’ written notice to plaintiff by certified mail.
Conclusion
For the reason stated herein, the husband is ordered to pay pendente lite child support in the amount of $17,591 per year on a monthly basis of $1,465.91 per month. He is further directed to pay pendente lite maintenance in the amount of $24,667.42 per year or $2,055.61 per month; the court having determined that an award of $37,016.14 per year would be unjust and inappropriate based upon clauses (g) and (1) of the statute. The parties shall share the cost of child care at a ratio of 79.60% by the husband or $16,238.40 per year, ($1,353.20) per month and 20.40% by the wife or $4,161.60 per year, ($346.80) per month. First payments are to be made on February 1, 2011, and subsequent payments to be made on the first day of each month thereafter. All unreimbursed medical expenses for the wife and child are to be paid pro rata in accordance with the calculations herein. Pendente lite counsel fees in the amount of $5,000 to be paid to the wife by the husband within 30 days. All payments shall be retroactive to the date of the first application (see Dooley v Dooley, 128 AD2d 669 [2d Dept 1987]).
*372 The plaintiff husband shall receive a credit retroactive to the date of the application for any voluntary payment made or payments made pursuant to the interim orders of the court. The application for return of the $9,000 allegedly misappropriated by the wife is referred to the trial court inasmuch as an evidentiary hearing on the issue will be necessary to determine the claim.

. The court also ordered an emergency investigation regarding the safety of the child pursuant to Family Court Act § 1034 on November 10, 2010.

. The statute states:
“6-a. Law revision commission study, a. The legislature hereby finds and declares it to be the policy of the state that it is necessary to achieve equitable outcomes when families divorce and it is important to ensure that the economic consequences of a divorce are fairly shared by divorcing couples. Serious concerns have been raised that the implementation of New York state’s maintenance laws have not resulted in equitable results. Maintenance is often not granted and where it is granted, the results are inconsistent and unpredictable. This raises serious concerns about the ability of our current maintenance laws to achieve equitable and fair outcomes.
“The legislature further finds a comprehensive review of the provisions of our state’s maintenance laws should be undertaken. It has been thirty years since the legislature significantly reformed our state’s divorce laws by enacting equitable distribution of marital property and introduced the concept of maintenance to replace alimony. Concerns that the implementation of our maintenance laws have not resulted in equitable results compel the need for a review of these laws.
“b. The law revision commission is hereby directed to:
“(1) review and assess the economic consequences of divorce on the parties;
“(2) review the maintenance laws of the state, including the way in which they are administered to determine the impact of these laws on post marital economic disparities, and the effectiveness of such laws and their administration in achieving the state’s policy goals and objectives of ensuring that the economic consequences of a divorce Eire fairly and equitably shared by the divorcing couple; and
“(3) make recommendations to the legislature, including such proposed revisions of such laws as it determines necessary to achieve these goals and objectives.
“c. The law revision commission shall make a preliminary report to the legislature and the governor of its findings, conclusions, and any recommendations not later than nine months from the *357 effective date of this subdivision, and a final report of its findings, conclusions and recommendations not later than December thirty-first, two thousand eleven” (Domestic Relations Law § 236 [B] [6-a]).

. The wife submitted a temporary maintenance guidelines worksheet and the parties stipulated to its submission at the time of oral argument.

. The FICA paid by the parties was derived from the temporary maintenance guidelines worksheet submitted and agreed to on the record.

. As defined by both the maintenance guidelines and the Child Support Standards Act (CSSA). The total income was derived from the basic mathematical calculation. However, this court notes that it differs from the parties’ temporary maintenance guidelines worksheet. The parties calculated $140,497.77, not $143,677.77, for the husband and $30,436.13 for the wife, *358 not $30,435.93. It is unclear to this court how the parties arrived at these numbers. The court simply subtracted the FICA and local tax to arrive at the income for purposes of the pendente lite maintenance formula.

. The pendente lite maintenance award is not income to the wife for the child and maintenance calculation. Since no prior order existed and, therefore, the monies were not reportable in the most recent tax year it is not counted as income (see Lee v Lee, 18 AD3d 508, 510 [2d Dept 2005] [“The court also erred in considering the maintenance to be received by the wife as her income for purposes of performing the CSSA calculations” (citations omitted)]; see *360 also Matter of Krukenkamp v Krukenkamp, 54 AD3d 345, 346 [2d Dept 2008] [“The Child Support Standards Act requires the court to establish the parties’ basic child support obligation as a function of the ‘gross (total) income’ that is, or should have been, reflected on the party’s most recently filed income tax return. Since . . . the total income reported on the mother’s most recently filed tax return included the maintenance payments she had received from the father that year, . . . that sum was improperly excluded from her income for the purpose of calculating her child support obligation” (citations omitted)]).

. The husband’s federal and state tax payments were derived from his 2009 W-2 which is annexed to his “reply affidavit in support of defendant’s cross motion.”

. The wife did not submit a W-2 statement for herself. The tax payments of the wife were derived from her affidavit of net worth dated November 1, 2010, which is annexed to the notice of cross motion. The wife reported she has biweekly deductions for federal tax in the amount of $28.08 and state tax in the amount of $41.44.

. The court omitted an expense of “back rent” in the amount of $1,050 which was placed next to the household maintenance section on the husband’s *365 affidavit of net worth. The husband elaborates in his “Reply Affidavit” which annexes the landlord’s three-day notice that $9,700 is due. However, the notice is not dated and it is unclear to this court the outstanding balance due. The explanation given by the husband for the need to pay back rent is that the wife used the parties’ rent money to purchase recreational drugs, particularly, ecstacy. This court also omitted the husband’s tax obligation itemized in his expense section, as these number have been considered above.

. This court notes both parties deducted the total monthly day care expenses of $1,700 in calculating their monthly expenses.