OPINION OF THE COURT
Francesca E. Connolly, J.
The defendant’s motion by order to show cause seeks an or *992 der of pendente lite relief, including an order of child support in the amount of $1,854 per month plus 71% of all statutory addons, maintenance in the amount of $1,443 per month, contribution to the expenses of the marital residence including paying one half of the mortgage and real estate taxes, an order directing the plaintiff to complete the transfer of title to the 1998 Ford Suburban and 2004 GMC Suburban to his sole name and to obtain insurance for these vehicles without prejudice to defendant’s equitable distribution of these assets, and an award of interim counsel fees in the amount of $10,000. The plaintiff opposes the motion claiming it is unnecessary. He alleges that he has been voluntarily contributing to the shelter and support of the children based upon his actual income. He claims that the support award the defendant seeks from him is impossible, as she misrepresents both his income and the parties’ expenses to this court.
Factual Background
The parties were married on March 7, 1999 and have two children of the marriage, ages 10 and 13. This action for divorce was commenced on December 13, 2011. The plaintiff is 45 years of age and the defendant is 52 years of age. The marital residence is located in Westchester County, New York. The plaintiff was removed from the marital residence after being arrested on December 4, 2011, following an incident where he allegedly choked the parties’ son. The plaintiff denies choking his son, claiming he was only wrestling with him. Child Protective Services became involved and, according to the plaintiff, the report was “unfounded.” There is currently a temporary order of protection in place. An attorney for the children was appointed on February 16, 2012. The plaintiff has supervised visitation with the children. The plaintiff currently lives with his parents in Westchester County.
The defendant is employed as a secretary in a school district and also works selling real estate. In 2011 she earned $45,127.55, comprised of $30,150.50 from income as a secretary, as reflected on her 2011 W-2, and $14,977.50 from her work in real estate, as reflected on her 1099. In 2010 she earned income of $20,826, of which $393 was from her work in real estate.
The plaintiff is self-employed and owns a construction business. The parties’ 2010 tax return shows the plaintiff earned business income of $28,345, with a net profit of $8,571 after expenses. The parties’ 2011 income tax return shows the plaintiff earned business income of approximately $37,000, which, after *993 deduction of various expenses, netted a profit of $24,106. A review of the business’ schedule Cs for other years indicate net profits of $42,635 for 2004, $36,740 for 2005, $37,937 for 2006, $46,580 for 2008 and $31,246 for 2008. Both parties acknowledge that many of the household expenses were historically paid through the plaintiffs business.
The defendant asks this court to impute income to the plaintiff in the amount of $110,000, claiming he has underreported his income on their tax returns. She asserts that they could not have afforded their lifestyle on plaintiff’s claimed income. She began working in 2006, yet the parties have traditionally lived a comfortable lifestyle, taking modest vacations and providing nicely for their children. She asserts they purchased the marital residence in 2006 by paying $100,000 in cash and taking a mortgage of $400,000. She asks this court to conclude that the plaintiff earned substantially more income than reported based upon their lifestyle and expenses.
The plaintiff claims his income as reported is accurate, pointing to the decline in the construction industry since 2008 due to the poor economy. He claims that the parties were able to afford their lifestyle because their income has been supplemented by the proceeds of the sale of a “spec” house in 2008, which earned plaintiff a profit of $258,946.09. This money was deposited into various marital accounts and used over the last four years for living expenses, with the remaining balance of $48,000[1] distributed equally to the parties in approximately December 2011, with each party receiving $24,000. The defendant did not address this additional income in her motion; however, once the plaintiff raised this issue in his opposition papers, the defendant minimizes the impact of this source of funds on their finances in her reply papers. She claims that the plaintiff had a “silent partner” in the sale of the spec house who was paid $60,000 from the proceeds. She does not identify the name of this person nor show any evidence of this claim. Nor does she acknowledge that the parties used the balance of the proceeds to pay for their usual and customary expenses, but rather, she states that this will be an issue at trial.
The defendant’s stated expenses on her net worth statement dated March 2, 2012 total $7,404.18 per month and include *994 $3,322 for the mortgage and real estate taxes, $560 for utilities, $540 for food, clothing, and laundry, $298 for various insurances, $350 for unreimbursed medical expenses, $350 for household maintenance, $200 for household help, $280 for automobile expenses, $90 for education, $85 for camp, $200 for recreation, and $790 for miscellaneous expenses.
She lists assets of $36,909.99 in a Capital One account, $24,106 in HSBC mutual funds, a life insurance policy on the plaintiff with a face value of $1,588.86, a pension with an indeterminate amount, and an IRA valued at $14,267.53. She claims to have $18,000 in premarital funds, which the plaintiff disputes. Her debts are listed as a mortgage on the marital residence in the amount of $383,151.39 and approximately $11,000 in credit card debt, $5,000 of which she claims is the plaintiffs business debt. She is also paying half of the automobile insurance coverage for two vehicles owned by the parties but used by the plaintiff in his business.
The plaintiffs stated expenses on his net worth statement dated February 2012, total $6,777.31 per month and include $3,200 for the mortgage, $640 for utilities, $640 for food, $416.66 for various insurances, $26.50 for unreimbursed medical expenses, $511.50 for automobile expenses for three vehicles, $172 for educational expenses, $251 for recreational expenses, and $263 in miscellaneous expenses, which include the repayment of a loan. He claims his personal monthly expenses include $430 for groceries, $475 for clothing, $15 for dry cleaning, $166 for automobile insurance, $26.50 for unreimbursed medical expenses, $511.50 for gasoline, repairs, and tolls, $58 for miscellaneous expenses and $200 for credit card debt. He also claims he pays his parents $700 per month for rent, which the defendant disputes.
The plaintiff lists assets of $13,800 in cash accounts, $24,000 in a joint CD, and equity in the marital residence in an indeterminate amount. The plaintiff is the sole owner of a construction company, the value of which is unknown. His net worth statement lists liabilities of $4,700 in credit card expense, some of which was incurred by the business, and the mortgage of $370,000.
The plaintiff has been voluntarily contributing support for the household expenses and children’s needs. Initially, he was paying one half of the mortgage on the marital residence, as well as paying the cable, Internet, phones, car insurance, and Con Edison bills through his business. Currently, he is paying *995 one half of the mortgage payment and giving the defendant $1,000 for other expenses, totaling $2,700 per month. He challenges many of the defendant’s claimed expenses, such as the expenses for babysitting when her family watches the children for no charge, and $100 for a maid when she has never employed one. He also criticizes her monthly expenses for gardening and snow plowing when there are no charges for these services. Many of the defendant’s claimed expenses are nonexistent or inflated, as she concedes in her reply affidavit. However, she anticipates having these expenses in the future once the parties are divorced. The defendant’s net worth statement establishes her reasonable monthly expenses to maintain the home and care for herself and the children, excluding add-on expenses, are about $6,000 per month.
It appears the plaintiff has historically earned income greater than the amount reported on the parties’ income tax returns. The plaintiff goes to great lengths to show this court the deposits made into his business account in an effort to establish how little he earns. However, this exercise does not rule out the possibility that plaintiff earned other income that was not deposited into this account. Moreover, it defies logic that the plaintiff would hire employees and maintain the expenses for two trucks, including gas and insurances, to run a business that only turned an annual profit in 2010 of $8,571, making his earnings substantially less than minimum wage. While it appears the plaintiff underreported his income since 2008, the parties have also supplemented their earned income with proceeds from the sale of the spec house. The remaining proceeds in the approximate amount of $50,000 to $60,000 have been distributed to the parties. The defendant takes the position that the remaining funds she received from the sale of the spec house should not be used to pay the household expenses, but rather, her share should be considered her separate property since the accounts have already been divided.
Discussion/Analysis
Pendente Lite Support
Temporary Maintenance
For all actions commenced after October 12, 2010, courts are required to apply a statutory mathematical formula in determining temporary maintenance awards (Domestic Relations Law § 236 [B] [5-a] [c]). The standards previously used by the courts in determining pendente lite support — fashioning an award that *996 serves as an accommodation between the reasonable needs of the moving spouse and the financial ability of the other spouse (Pezza v Pezza, 300 AD2d 555 [2d Dept 2002]; Anonymous v Anonymous, 63 AD3d 493, 498 [1st Dept 2009]), and to “tide over the more needy party, not to determine the correct ultimate distribution” (Valente v Valente, 269 AD2d 389, 390 [2d Dept 2000]; Yecies v Yecies, 108 AD2d 813, 814 [2d Dept 1985]) — no longer apply. The new statute “creates a substantial presumptive entitlement . . . [i]n an effort to provide ‘consistency and predictability in calculating temporary spousal maintenance awards’ ” (Khaira v Khaira, 93 AD3d 194, 197 [1st Dept 2012]).
Pursuant to Domestic Relations Law § 236 (B) (5-a) (c), after the statutory formula is applied to the parties’ income, the calculated amount is considered the presumptive award of temporary maintenance, which shall be ordered, unless the court finds that the presumptive award would be unjust or inappropriate based upon the following 17 factors prescribed in Domestic Relations Law § 236 (B) (5-a) (e) (1):
(a) the standard of living established during the marriage;
(b) the age and health of the parties;
(c) the earning capacity of the parties;
(d) the need of one party to incur education or training expenses;
(e) the wasteful dissipation of marital property;
(f) the transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
(g) the existence and duration of a premarital joint household or a pre-divorce separate household;
(h) acts by one party against another that have inhibited or continue to inhibit a party’s earning capacity or ability to obtain meaningful employment;
(i) the availability and cost of medical insurance for the parties;
(j) the care of the children or stepchildren, disabled adult children or stepchildren, elderly parents or in-laws that has inhibited or continues to inhibit a party’s earning capacity or ability to obtain meaningful employment;
(k) the inability of one party to obtain meaningful employment due to age or absence from the work force;
(l) the need to pay for exceptional additional expenses for the children, including school, day care, and medical treatment;
*997 (m) the tax consequences to each party;
(n) marital property subject to distribution;
(o) the reduced or lost earning capacity of the party seeking temporary maintenance as a result of having foregone or delayed education, training, employment, or career opportunities during the marriage;
(p) the contributions and services of the party seeking temporary maintenance as a spouse, parent, wage earner, and homemaker, and to the career potential of the other party; and
(q) any other factor the court expressly finds to be just and proper.
In making the calculations, the court must first determine the parties’ income as defined by Domestic Relations Law § 236 (B) (5-a) (b) (4). In determining income for purposes of calculating temporary maintenance, the statute uses the same definition of income as set forth in the Child Support Standards Act, and also includes any income from income producing property to be distributed as part of equitable distribution (Domestic Relations Law § 236 [B] [5-a] [b] [4]). The court is required to establish the parties’ support obligation “as a function of the income that is, or should have been, reflected on the party’s most recently filed income tax return” (see Wallach v Wallach, 37 AD3d 707, 708 [2d Dept 2007]; Domestic Relations Law § 240 [1-b] [b] [5] [i]). Where the record demonstrates that a party’s income tax return does not reflect the party’s actual income or demonstrated earning potential, the court may impute income to establish the party’s support obligation (id.; see also Bittner v Bittner, 296 AD2d 516, 517 [2d Dept 2002]). In determining income for purposes of calculating temporary maintenance, the statute is problematic, as it requires the court “to consider factors some of which can only be established after a full trial and/or extensive discovery” (Scott M. v Ilona M., 31 Misc 3d 353, 361 [Sup Ct, Kings County 2011]).
However, for those difficult cases where the court is presented with insufficient evidence to determine gross income, or where a party defaults, Domestic Relations Law § 236 (B) (5-a) (g) requires the court to issue a temporary maintenance award based upon the needs of the party seeking maintenance, or the standard of living of the parties prior to commencement of the divorce action, whichever is greater.
Here, determining the plaintiffs income is particularly challenging. The parties’ lifestyle and expenses suggest income *998 greater than what they have reported on their income tax returns. According to the defendant, the plaintiff always has large amounts of cash on hand, including over $3,000 sitting in a drawer in the house he used to bail himself out of jail. Also, the defendant claims the plaintiff was able to accumulate $100,000 in cash to pay the down payment for the marital residence, which suggests that not all of his income is reported. Moreover, plaintiffs admission that his business paid many of the parties’ personal expenses indicates his actual earnings were greater than what he reported on his tax returns (see Beroza v Hendler, 71 AD3d 615 [2d Dept 2010]).
Due to the questionable financial information contained in the parties’ submissions, the court cannot determine with accuracy plaintiffs actual income. It is apparent that the parties’ lifestyle and the expenses set forth in their net worth statements exceed the income stated in their tax returns. The defendant suggests that this court should impute income to the plaintiff in the amount of $110,000. However, based upon the submissions, it appears that the plaintiff earns less than this amount. Nevertheless, if the court were to use this figure for plaintiffs imputed income, the presumptive award for temporary maintenance would be $13,048 per year, or $1,087.33 per month.[2]
In addition to the guideline amount of temporary maintenance, the defendant requests that the temporary maintenance award direct the plaintiff to pay one half of the monthly payments for the mortgage and real estate taxes. However, the statutory formula for calculating temporary maintenance is intended to cover all of the payee spouse’s presumptive reasonable expenses, including an allowance for housing. If the court *999 were to order the plaintiff to pay a portion of the defendant’s housing expenses in addition to the guideline amount of temporary maintenance, this award would include an impermissible double shelter allowance. (See generally Khaira v Khaira, 93 AD3d 194, 198 [2012]; Krantz v Krantz, 175 AD2d 863, 864-865 [2d Dept 1991]; Barone v Barone, 292 AD2d 481, 482-483 [2d Dept 2002]; Smitreski v Smitreski, 251 AD2d 490 [2d Dept 1998].) Although the court could adjust its calculations to avoid awarding a double shelter allowance by deducting any carrying charges attributable to the payor spouse from his gross income before calculating temporary maintenance, this method of calculation would be inappropriate under the facts and circumstances presented here considering the questionable financial information contained in the parties’ submissions to determine plaintiffs income.
After considering the 17 statutory factors set forth in Domestic Relations Law § 236 (B) (5-a) (e) (1), and in particular, the standard of living established during the marriage; the age and health of the parties; the earning capacity of the parties; the reduced or lost earning capacity of the party seeking temporary maintenance as a result of having foregone or delayed education, training, employment, or career opportunities during the marriage; the contributions and services of the party seeking temporary maintenance as a spouse, parent, wage earner, and homemaker; the career potential of the other party; and the reasonable expenses to maintain the pre-divorce marital residence, the court finds the presumptive amount of temporary maintenance of $1,087.33 per month, which is based upon the imputed income suggested by the defendant, would be unjust and inappropriate, thereby warranting a deviation.
Nevertheless, since the court has been provided with insufficient evidence to determine the plaintiffs gross income, the temporary maintenance award shall be based upon the defendant’s reasonable needs (Domestic Relations Law § 236 [B] [5-a] [g]). Considering the defendant’s income and the child support award as discussed below, an appropriate award for temporary maintenance would be $2,000 per month. This award, based on the defendant’s reasonable and necessary monthly expenses, is more appropriate under the circumstances presented here than a guideline amount of temporary maintenance predicated upon specious figures.
Child Support
“Courts considering applications for pendente lite child support may, in their discretion, apply the CSSA standards and *1000 guidelines, but they are not required to do so.” (Rubin v Della Salla, 78 AD3d 504, 505 [1st Dept 2010]; George v George, 192 AD2d 693 [2d Dept 1993].) In accordance with the Child Support Standards Act (CSSA), the court has considered the calculations delineated in Domestic Relations Law § 240 (1-b) (c) as well as the factors set forth in Domestic Relations Law § 240 (1-b) (f), which permits a deviation where the calculated amount is unjust or inappropriate. Considering the children’s reasonable monthly expenses, the court declines to apply the guidelines and makes an award of child support in the sum of $1,200 per month, which is just and appropriate after considering the expenses covered by the temporary maintenance award.
Support Award
The total support award of $3,200 per month, consisting of $2,000 in temporary maintenance and $1,200 in child support, shall be paid by the plaintiff to the defendant on the first day of each month, commencing on November 1, 2012. The defendant is responsible for paying all of the expenses for the marital residence, including the mortgage and taxes, as well as all other expenses for herself and for the children, except those set forth below, which shall be paid based upon the parties’ pro rata share of income. The maintenance award shall be tax deductible to the plaintiff and taxable as income to the defendant, or as permitted by the IRS. (See Internal Revenue Service, Publication 504, Divorced or Separated Individuals.)
The parties shall maintain in full force and effect any life insurance policy in effect with the other spouse designated as beneficiary. The parties shall also maintain in full force and effect the current medical and dental insurance coverage and shall contribute to the cost thereof based upon their pro rata share of income. The parties and the children shall use in-network health care providers whenever possible. The parties shall pay for the unreimbursed medical, dental, and other health care expenses, including psychological, psychiatric, therapy, and prescription expenses, based upon their pro rata share of income, with the plaintiff’s share being 70% and the defendant’s share being 30%. The parties shall also pay the children’s reasonable add-on expenses, including school expenses and extracurricular activities based upon their pro rata share of income (Domestic Relations Law § 240 [1-b] [c] [4], [5], [7]).
This award is retroactive to the original date of service of this application (see Domestic Relations Law § 236 [B] [6]; Dooley v Dooley, 128 AD2d 669 [2d Dept 1987]). Retroactive sums due by reason of this award shall be paid at the rate of $500 per month *1001 in addition to the sums awarded until all arrears have been satisfied. The plaintiff may take a credit for sums voluntarily paid for actual support of the children incurred after the making of this motion and prior to the date of this decision for which he has canceled checks or other similar proof of payment (see Peltz v Peltz, 56 AD2d 519 [1st Dept 1977]; Pascale v Pascale, 226 AD2d 439 [2d Dept 1996]). The first payment hereunder shall be made on November 1, 2012 and monthly thereafter, with payment to be made by the first day of each month.
Transfer of Title to Motor Vehicles
The defendant seeks an order directing plaintiff to complete the transfer of title to the 1998 Ford Suburban and a 2004 GMC Suburban to his sole name and to obtain insurance for these vehicles. She claims the plaintiff uses these vehicles in his business and they are often driven by his workers. She claims not to have funds to continue to insure these vehicles. To this end, defendant has given the titles to the plaintiffs attorney to enable the plaintiff to complete the title transfer and obtain insurance. To date, this has not been completed, although the plaintiff has allegedly agreed to do so. Since the plaintiff does not object to defendant’s request in his opposition papers, he is directed to complete the transfer of title and obtain insurance on these vehicles in his name or his businesses’ name within 10 days from the date of this order.
Counsel Fees
The defendant seeks an order directing the plaintiff to pay pendente lite counsel fees in the sum of $10,000. Domestic Relations Law § 237 creates a “rebuttable presumption that counsel fees shall be awarded to the less monied spouse.” The statute further provides that, in exercising its discretion, the court shall seek to assure that each party is adequately represented, and that any award for fees and expenses is made on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding (Domestic Relations Law § 237 [a]).
At first blush it appears that the plaintiff would be considered the monied spouse based upon the parties’ respective incomes. However, the support award shifts the parties’ finances, giving the defendant more available resources than the plaintiff. Considering that the parties have few assets to consider, the shift in financial resources to the defendant rebuts the presumption that the plaintiff is the monied spouse (see Scott M. v Ilona M., 31 Misc 3d 353 [2011]). Nevertheless, the plaintiff has been the primary wage earner during the marriage *1002 and has the ability to earn a substantially higher income than the defendant over the long term. The defendant only recently returned to work in a secretarial position. Considering her educational level and experience, her earnings potential is limited.
Defendant seeks $10,000 in interim counsel fees. To date she has paid her counsel $7,500 and owes an additional $3,532. Domestic Relations Law § 237 (a) authorizes the court to
“direct either spouse ... to pay such sum or sums of money directly to the attorney of the other spouse ' to enable that spouse to carry on or defend the action or proceeding as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties.”
This statute
“is designed to redress the economic disparity between the monied spouse and the non-monied spouse. Recognizing that the financial strength of matrimonial litigants is often unequal[,] . . . the Legislature invested Trial Judges with the discretion to make the more affluent spouse pay for legal expenses of the needier one. The courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant’s wallet” (O’Shea v O’Shea, 93 NY2d 187, 190 [1999]).
Moreover, “courts should not defer requests for interim counsel fees to the trial court, and should normally exercise their discretion to grant such a request made by the nonmonied spouse, in the absence of good cause” (Prichep v Prichep, 52 AD3d 61, 65 [2d Dept 2008]). “An appropriate award of attorney’s fees should take into account the parties’ ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, and the reasonableness of the fees under all of the circumstances” (Grumet v Grumet, 37 AD3d 534, 536 [2d Dept 2007]).
Accordingly, in order to create parity in the divorce litigation, while also considering the shift in financial resources to the defendant, the availability of limited assets to pay for litigation fees, and the noncomplexity of the issues presented, the defendant is awarded interim counsel fees in the amount of $7,500 to be paid by the plaintiff directly to the defendant’s attorney within 30 days after the date of this decision.
All other relief requested and not decided herein is denied.

. The plaintiff claims they each received $33,000. The defendant does not deny this but claims they distributed $48,000 consisting of the remaining proceeds from the sale of the spec house, and they distributed another $18,000 of marital assets from a savings account.

. The plaintiffs net income would be calculated at $96,489 ($110,000 less $13,511 for FICA). The defendant’s net income is calculated at $42,579 ($45,128 less $2,549 for FICA). For the first calculation, the court is required to subtract 20% of the payee’s income from 30% of the payor’s income to arrive at the first figure for the comparison. Here, 20% of defendant’s income is $8,516, and 30% of the plaintiffs income is $28,947. After subtracting these figures, the first calculated figure is $20,431.
For the second calculation, the court is required to add together the payor’s income and the payee’s income, and multiply this sum by 40%. The payee’s income is then subtracted from this figure. Here, the parties’ incomes total $139,068. Multiplying this figure by 40% the calculated figure is $55,627. The defendant’s net income of $42,579 is then subtracted from the figure of $55,627, resulting in a difference of $13,048.
The guideline amount for temporary maintenance shall be the lower of these two calculated figures, which is $13,048 per year.