[938 NYS2d 513]

Camille Khaira, Respondent, v Jasvinder Singh Khaira, Appellant.

First Department, February 7, 2012

## APPEARANCES OF COUNSEL

*Moses Preston & Ziegelman, LLP*, New York City (*Robert M. Preston* and *Judith Ackerman* of counsel), for appellant.

*Mayerson Stutman Abramowitz, LLP*, New York City (*Harold A. Mayerson* and *Stephen A. Zorn* of counsel), for respondent.

## OPINION OF THE COURT

Saxe, J.

This appeal gives us the opportunity to consider the new guidelines for awards of temporary spousal maintenance under Domestic Relations Law § 236 (B) (5-a), particularly with regard to the circumstances in which the court may deviate from the guideline amount derived by formula (the presumptive award), and the procedures that must be undertaken to do so.

The parties married on July 8, 2006, having jointly purchased the marital residence the month before. They have two sons, born December 25, 2007 and December 1, 2009. The wife also has a son from a previous marriage, born February 1, 1992. In September of 2010, the husband voluntarily moved out of the marital residence, and in October 2010, the wife commenced this divorce proceeding. She moved for pendente lite support, asking for monthly maintenance of $11,500 and child support of $7,290, and a direction that the husband directly pay the carrying costs on the marital residence, child care expenses, and all health care expenses for the family.

To determine temporary maintenance, the motion court had to apply Domestic Relations Law § 236 (B) (5-a), which had become effective on October 12, 2010, just days before the motion was made. The court determined the presumptive award to be $11,500 per month, awarded the wife $13,870 in unallocated spousal and child support, tax deductible to the husband, and required the husband to directly pay to the lender the monthly mortgage payments on the marital residence in which the wife and the children continue to reside, and the health care insurance premiums and unreimbursed health care expenses for the family, including his stepson. It also directed the husband to pay the wife interim counsel fees in the amount of $42,000.

On appeal, the husband contends that the motion court awarded the wife an excessive sum because it failed to consider his actual, documented net monthly income and cash flow, and incorrectly calculated his annual income by including nonrecurring earnings such as a one-time bonus arising out of a Black-

stone IPO, and illiquid, noncash equity compensation arising out of the same IPO. He challenges the counsel fee award on the ground that the wife's mother guaranteed her counsel fee obligation, and counsel has been paid in full to date. He also challenges the directive that he pay the health care expenses of his stepson.

The new Domestic Relations Law § 236 (B) (5-a) reflects a substantial change in the Legislature's approach to temporary maintenance. The previous spousal maintenance provision gave the court great leeway, directing only in general terms that it order maintenance "in such amount as justice requires," considering the parties' standard of living during the marriage, the reasonable needs of the nonmonied spouse and the monied spouse's ability to pay, and with regard to a list of factors such as the parties' respective earning capacities (former Domestic Relations Law § 236 [B] [6]). Courts applying that provision observed that pendente lite maintenance was awarded to "tide over the more needy party, not to determine the correct ultimate distribution and to ensure that a needy spouse is provided with funds for his or her support and reasonable needs" (see e.g. Iannone v Iannone, 31 AD3d 713, 714 [2006] [internal quotation marks and citations omitted]).

■ The new provision, rather than aiming merely to "tide over" the nonmonied spouse, creates a substantial presumptive entitlement. In an effort to provide "consistency and predictability in calculating temporary spousal maintenance awards" (Assembly Mem in Support, 2010 McKinney's Session Laws of NY, at 1943), the Legislature created formulas for the court to apply to the parties' reported income, as it did when it enacted the Child Support Standards Act (CSSA) (Domestic Relations Law § 240 [1-b]; Family Ct Act § 413). Further, the statute requires the court to explain any deviation from the result reached by the formula.

The new formula for temporary maintenance requires the court to begin with the parties' gross income as reflected in their most recent federal tax returns, less FICA and city taxes. The court must make two alternate initial calculations, based on the payee's income and the payor's income up to an initial cap of $500,000: first, the difference between 30% of the payor's income and 20% of the payee's income, and second, 40% of the parties' combined incomes, less the payee's income. The lesser of the results of these two calculations is the "guideline amount of temporary maintenance" (§ 236 [B] [5-a] [c] [1]). Where the

payor's income exceeds $500,000, "the court shall determine any additional guideline amount of temporary maintenance through consideration of [19 enumerated] factors" (§ 236 [B] [5-a] [c] [2] [a]), and "shall set forth the factors it considered and the reasons for its decision" (para [c] [2] [b]). Next, the court must consider whether the guideline amount—the presumptive award—would be "unjust or inappropriate," on consideration of 17 enumerated factors (§ 236 [B] [5-a] [e] [1]).*

The motion court properly followed the initial procedures. It applied the $500,000 cap to the husband's income, and using $60,000 as the wife's income, based on the monthly payments she acknowledged receiving from her parents, performed the two calculations: for the first, it subtracted 20% of $60,000 ($12,000) from 30% of $500,000 ($150,000), arriving at $138,000; for the second, it calculated 40% of $560,000 ($224,000), then deducted $60,000, arriving at $164,000. It properly treated the lesser of these two calculations, $138,000, as the guideline amount.

At that point, the court observed that the parties' 2008 joint income tax return reflected an adjusted gross income of $851,549, almost all from the husband's earnings at the investment firm the Blackstone Group, and that their 2009 tax return reflected an adjusted gross income of $1,063,426, also almost entirely from the husband's employment. However, it did not then proceed to explicitly discuss whether an additional amount of maintenance was warranted from the portion of the husband's income that exceeded the $500,000 cap, as required by section 236 (B) (5-a) (c) (2).

---

* One of those factors in particular has been the subject of substantial criticism: Factor (n), requiring the consideration of "marital property subject to [equitable] distribution," has been challenged as inappropriate in this early stage of the litigation, since it is more appropriately considered in determining final support at the conclusion of trial, after equitable distribution has been determined (see Rosenberg, Outside Counsel, Multiple Flaws Abound in New Interim Spousal Support Statute, NYLJ, Feb. 25, 2011, at 4, col 4; Stashenko, City Bar Suggests Changes in Maintenance Rules, NYLJ, Nov. 4, 2011, at 4, col 5). Another concern has been raised by Justice Jeffrey Sunshine regarding factor (q), "any other factor which the court shall expressly find to be just and proper." Justice Sunshine points out that while that factor seems to give the court broad discretion to find the guideline amount "unjust or inappropriate," courts may not simply reject the guideline amount as an act of equity, reasoning that the amount is simply too much money and causes a "resource shift," since consistency in maintenance awards is the statute's primary concern, and the creation of a "resource shift" between the parties is the statute's purpose (see Scott M. v Ilona M., 31 Misc 3d 353, 363 [2011]).

Instead, the court next examined the wife's submitted monthly expense budget of approximately $21,267 and concluded that with the exception of claims for $1,000 for gifts and $225 for charitable contributions, the remainder ($20,041), which included $4,125 for the cost of a nanny, represented the wife's and the children's reasonable needs. In essence, the court simply ruled that the husband should pay the full amount of the wife's and the children's claimed needs, partly through his payment of the mortgage on the marital residence ($5,317) and the family's health care premiums and unreimbursed medical expenses ($855), and partly through monthly payments to the wife of $13,870. In other words, the court awarded the wife $20,041 in unallocated spousal and child support without setting out a calculation of appropriate child support and without discussing or even mentioning the factors in Domestic Relations Law § 236 (B) (5-a) (c) (2).

■ In considering the husband's challenge to the award, we reject, at the outset, his suggestion that his support obligation should have been calculated based solely on his base pay, without reference to his bonus, or that the court should have taken into consideration his net pay. The statute instructs the court to base the calculations on the payor's gross income as reported in his federal income tax return, and the motion court properly did exactly that, correctly treating the husband's bonuses as income and ignoring his reliance on his net income (which, of course, can be manipulated with deductions and deferred compensation).

However, the motion court did not strictly comply with the requisites of Domestic Relations Law § 236 (B) (5-a).

The wife points out that if the motion court had determined the child support component of its award with reference to the CSSA, by taking 25% of $130,000, it would have arrived at a presumptive child support award of $2,418 per month. She argues that since that sum, when added to the spousal support award of $11,500, is just a few dollars more than the cash sum awarded to the wife as unallocated support, the pendente lite award is proper. The problem with this contention, however, is that it assumes the propriety of treating mortgage and health care costs as add-ons, rather than as expenses included in the support covered by the formula of Domestic Relations Law § 236 (B) (5-a) (c). That is, it suggests that the formula was intended to cover the support needs of the nonmonied spouse, such as food and clothing, but *not* the cost of the mortgage payments for her residence.

■ No language in either the new temporary maintenance provision or the CSSA specifically addresses whether the statutory formulas are intended to include the portion of the carrying costs of their residence attributable to the nonmonied spouse and the children. As one commentator has pointed out, the new law

> "does not factor in child support issues or payment of household expenses. Is the recipient supposed to pay for everything in the house from this money? Is the payor supposed to stop paying those bills?
>
> "What about all the double counting of housing, child care, and medical insurance between this law and the child support law?" (*See* Rosenberg, Outside Counsel, *Multiple Flaws Abound in New Interim Spousal Support Statute*, NYLJ, Feb. 25, 2011, at 4, col 4, *supra.*)

But, in the absence of a specific reference to the carrying charges for the marital residence, we consider it reasonable and logical to view the formula adopted by the new maintenance provision as covering all the spouse's basic living expenses, including housing costs as well as the costs of food and clothing and other usual expenses.

It is true that before the enactment of the new maintenance provision, it was a common practice to award spousal support partly in direct cash payments and partly in payments to third parties. This was often not only eminently reasonable, but also the most expedient way of covering payment of the necessities, and protecting the home as a marital asset. However, we believe that the new approach of calculating spousal support payments to the nonmonied spouse by means of a formula is intended to arrive at the amount that will cover all the payee's presumptive reasonable expenses. By calculating the guideline amount and then simply adding the direct mortgage payment on top of that, the motion court awarded more than the amount reached by the formula, without providing the required explanation.

It is quite possible that directing payment above and beyond the guideline amount may be appropriate in certain situations. For instance, the direct mortgage payment might be justifiable as additional support when the payor's income exceeds $500,000 and the applicable factors listed in Domestic Relations Law § 236 (B) (5-a) (c) (2) (a) are taken into account; or, depending on the size of the mortgage payment, perhaps only part of it

should be treated as the payee's housing costs, and the remainder should be treated as the upkeep of a marital investment. Perhaps there are other reasons why the guideline amount is unjust or inappropriate. It may well be that in this case, consideration of the enumerated factors, such as the stark difference in the parties' current earning capacities, their standard of living during the marriage, and the need to pay for day care, would justify the motion court's direction that the husband pay as additional maintenance a specified portion of his income beyond the $500,000 cap; indeed, that may have been the motion court's implicit intent. However, because the statute expressly requires the court to both make and explain that determination (see Domestic Relations Law § 236 [B] [5-a] [c] [2] [b]), this Court cannot permit the award to remain as it currently stands. While the ultimate support award may well be appropriate, it must be appropriately supported and explained. We therefore modify so as to vacate the support award and remand the matter for a reconsideration of the award in light of the directives of Domestic Relations Law § 236 (B) (5-a).

We also vacate the portion of the order that places responsibility on the husband for his stepson's health care insurance and unreimbursed health care expenses. There is no allegation that the stepson "is a recipient of public assistance[ ] or that he is in danger of becoming a public charge" (Matter of Dora T.J. v Jean-Paul A.S., 224 AD2d 420, 421 [1996]), and no other legal rationale for imposing that obligation on the husband.

Finally, we uphold the award of counsel fees to the wife as the "less monied spouse" (see Domestic Relations Law § 237 [a]). The statute provides that "[p]ayment of any retainer fees to the attorney for the petitioning party shall not preclude any awards of fees and expenses to an applicant which would otherwise be allowed under this section" (id.); the husband's argument that no award of fees was appropriate because the wife's mother paid her attorney's retainer fee fails to rebut the presumption in favor of the award.

Accordingly, the order of the Supreme Court, New York County (Deborah A. Kaplan, J.), entered April 1, 2011, which, insofar as appealed from as limited by the briefs, awarded plaintiff interim counsel fees and $13,780 per month in unallocated maintenance and child support, and directed defendant to pay health care insurance and unreimbursed health care costs for his stepson, should be modified, on the law, to delete the

directive that defendant pay the stepson's health care insurance and other health care costs, to vacate the unallocated maintenance-child support award, and to remand the matter for a reconsideration of the award in light of the directives of Domestic Relations Law § 236 (B) (5-a), and otherwise affirmed, without costs.

SAXE, J.P., SWEENY, DEGRASSE, MANZANET-DANIELS and ROMÁN, JJ., concur.

Order, Supreme Court, New York County (Deborah A. Kaplan, J.), entered April 1, 2011, modified, on the law, to delete the directive that defendant pay the stepson's health care insurance and other health care costs, to vacate the unallocated maintenance-child support award, and to remand the matter for a reconsideration of the award in light of the directives of Domestic Relations Law § 236 (B) (5-a), and otherwise affirmed, without costs.