OPINION OF THE COURT
Richard A. Dollinger, J.
In this case, the defendant wife seeks an award of temporary maintenance under the recently enacted temporary maintenance statute (Domestic Relations Law § 236 [B] [5-a]), and counsel fees. The parties are living apart and provide for their *391 two children pursuant to a custody and support agreement, dated February 10, 2011. The agreement dictates joint custody of the children and requires the husband to pay $11,700 a year to the wife for child support.
The Finances of the Husband and Wife
The husband and wife each submitted a statement of net worth. In 2010, the wife earned $23,442 and the husband earned $83,564. While there is no dispute regarding their respective incomes, the parties disagree regarding their expenses. According to the husband’s application, the wife lists monthly expenses of $2,587 or annual expenses of $31,044. He notes that the wife’s expense list includes $150 per month for birthday parties, a fact that he suggests indicates that the wife has overstated her expenses. He also notes that the wife lists “extracurricular s” as expenses, when the agreement requires him to pay those expenses without contribution from the wife. The husband argues that when the $11,700 in child support is added to the wife’s available resources, they exceed her stated necessary expenses. He also argues that the wife left the marital residence to establish her own household prior to the filing of the divorce, creating additional costs, and causing financial consequences for herself. He implies that these are expenses that he should not have to pay for through temporary maintenance.
The husband asserts that the marital assets are devoid of any significant equity. It is undisputed that the assets — including the marital residence — are encumbered by loans that exceed their fair market value. According to the husband, the wife, by being released from these assets in a final settlement will receive “another windfall in the form of not being required to pay the loss if the items were sold at their current market value.” The husband argues that because he will be required to liquidate their joint debts, he will suffer further economically because he is paying for goods that have no value. The husband adds that the only asset with any real value is his retirement account which will be subject to a Majauskas distribution. (See Majauskas v Majauskas, 61 NY2d 481 [1984].)
Under these circumstances, the husband asks this court to deviate from the standards established under Domestic Relations Law § 236 (B) (5-a) and makes three arguments. First, he claims that his annual financial needs, as detailed in his state *392 ment of net worth, are $62,955 per year.[1] If he pays $11,700 in child support, deducts his income and other payroll taxes, and pays any significant temporary maintenance — even if it is much less than the presumptive amount dictated by the new temporary maintenance guidelines — the husband will be unable to meet his expenses and be forced to sell the marital residence. Second, he argues that if he pays his payroll taxes, his child support, and the presumptive amount of temporary maintenance, he will no longer be the “monied spouse” and his wife will have more available resources despite the fact that she earns $60,000 less annually than her husband. Third, he claims that this income shift will give the wife substantially more income than she claims is necessary to pay her annual living expenses.
The wife argues that the husband received a deviation on his child support obligations under the agreement, and alleges that he invested $8,900 in his retirement account while at the same time claiming he is unable to pay temporary maintenance. The wife points out that she moved out of the marital residence into an apartment and reduced her standard of living. She argues that this “attempt to live within her means does not disqualify her from being entitled to receive maintenance to maintain the standard of living” she had during the marriage. She adds: “That is precisely why the statute was written and why it has specific standards similar to the Child Support Standards Act, so the court can avoid making random case by case decisions with respect to everybody’s alleged income and alleged expenses in determining child support or maintenance.” The wife also argues that the husband, by deducting his income taxes from his available income, acts in derogation of the standards because the maintenance payments are tax deductible.
Both the parties dispute the method for calculating the temporary maintenance. Using the temporary guidelines in Domestic Relations Law § 236 (B) (5-a) (e) (1), the wife calculates the temporary maintenance at $19,349.60 annually ($1,612.47 *393 monthly). The husband calculates the temporary maintenance at $17,867 annually.
The Temporary Maintenance Statute
The new statute “shifts the award of temporary maintenance from a needs-based/status quo analysis to an income-based analysis.” (Report of New York City Bar Association to New York State Law Revision Commission, Appendix B, Proposed Amendments and Comments to Temporary Maintenance Guidelines at 3 n 4 [Oct. 2011].) Domestic Relations Law § 236 (B) (5-a) (e) (1) states that “[t]he court shall order the presumptive award of temporary maintenance in accordance with paragraphs c and d of this subdivision, unless the court finds that the presumptive award is unjust or inappropriate and adjusts the presumptive award of temporary maintenance accordingly based upon consideration of . . . factors.”
The statute implements an interesting sequence of language. In its definition section, the statute refers to “guideline amount of temporary maintenance.” (Domestic Relations Law § 236 [B] [5-a] [b] [6].) The definition of “presumptive award” incorporates the “guideline amount of the temporary maintenance award . . . prior to the court’s application of any adjustment.” (Domestic Relations Law § 236 [B] [5-a] [b] [8].) Therefore, when the statute requires this court to “order the presumptive award of temporary maintenance,” the only requirement is to implement the “guideline amount” as set forth in the formula. (Domestic Relations Law § 236 [B] [5-a] [e] [1].) When read in concert with each other, these phrases suggest that the “guideline” is simply that: a precept that can be reviewed by the court to determine whether it is “unjust or inappropriate.”
A review of the legislative history supports this rationale. In the Senate sponsor’s memorandum, the drafters indicated:
“This measure would create numerical guidelines for calculating the presumptive amount of the temporary maintenance awards with deviation factors to be employed by the court in its discretion where the presumptive amount of the award is unjust or inappropriate. These deviation factors include a catch-all ‘any other factor’ that the court may apply if it chooses to adjust the presumed award. The numerical guidelines proposed in this measure are similar to the recommendations of the American Academy of Matrimonial Lawyers based *394 on their study of approaches in numerous jurisdictions across the country.” (Senate Introducer Mem in Support of 2008 NY Senate Bill S8390, codified as L 2010, ch 371.)
The sponsor’s memorandum repeatedly refers to the numerical calculations as “guidelines” and emphasizes that the changes are designed to move away from an “un-prioritized list of factors [which] does not provide adequate guidance on how to consider each of these factors, resulting in varying monetary and durational awards for couples with similar incomes and similar length[s] of marriage.” (Id.)
The sponsor’s memorandum also makes reference to the guidelines as being adopted from the American Academy of Matrimonial Lawyers (AAML). However, as a recent report from the New York Law Revision Commission indicates, the AAML’s “guidelines” suggest that the formula — which the New York changes implement — was only “a starting point for negotiations” and the AAML never approved the formula as “a guideline of any kind.” (American Academy of Matrimonial Lawyers, Considerations When Determining Alimony, Maintenance and Support [2007], cited in New York State Law Revision Commission, Preliminary Report on Maintenance Awards in Divorce Proceedings at 15-16 [May 11, 2011].) As the legislative history indicates, the “guideline amount,” while eventually being transformed in the language of the statute into a “presumptive award,” actually remains what it was at its inception: a benchmark to the courts for determining a fair and reasonable temporary maintenance award.
Few courts have reviewed the temporary maintenance statute. In Khaira v Khaira (93 AD3d 194 [1st Dept 2012]), the Court noted that the new statute was “a substantial change in the Legislature’s approach to temporary maintenance,” and that the guidelines were no longer intended to “tide over the nonmonied spouse,” but instead “create[ ] a substantial presumptive entitlement.” (Id. at 198 [internal quotation marks omitted].) Under the statute, the court is required to calculate the “presumptive award,” but after performing the calculation, it must decide whether the amount is “unjust or inappropriate” (Domestic Relations Law § 236 [B] [5-a] [e] [1]). Under the Khaira analysis, the determination of whether the presumptive award is “unjust or inappropriate” must be based on the “consideration of 17 enumerated factors” listed in Domestic Relations Law § 236 (B) (5-a) (e) (1) (93 AD3d at 198).
*395 Two trial courts have also reviewed the temporary guidelines. In Scott M. v Ilona M. (31 Misc 3d 353 [Sup Ct, Kings County 2011]), the court held that a downward modification of the presumptive calculation was appropriate under the statute. Similarly, in Martin v Buckley (33 Misc 3d 1234[A], 2011 NY Slip Op 52235[U] [Sup Ct, Monroe County 2011]), the court deviated from the presumptive amount, dropping the temporary maintenance from more than $1,000 per month to $800 per month. In both cases, the court concluded that just the sheer size of the presumptive maintenance award cannot be a catchall factor under the statute. (Scott M. v Ilona M., 31 Misc 3d at 363; Martin v Buckley, 2011 NY Slip Op 52235[U], *8.) Both courts seemed to be reluctant to disturb the presumptive award just because it was too large relative to the overall resources of the parties, and suggested that the presumptive calculation should not be rejected “because it [was] simply too much money.” (Id.)
The statute, while creating a presumptive schedule, was designed to inform judges and attorneys about parameters for temporary maintenance, but it was not intended to remove from judges the power to determine that the presumptive amount was “unjust or inappropriate.” In fact, the language of the statute compels the court, as an initial assignment, to make that determination. After doing so, the legislature permits the court to modify the award based on the factors listed in section 236 (B) (5-a) (e) (1).
However, in this court’s view, the determination of “unjust or inappropriate” does not require an analysis of the 17 enumerated factors. The court still has the discretion to determine that the award is “unjust or inappropriate” based on any factor it deems apropos and the “sheer size” of the award or the fact that the award constitutes “a resource shift” among the parties is a sufficient justification. The balancing of the relative financial positions of the two parties and evaluating the impact of the sliding of income from one spouse to another through the temporary maintenance award is precisely what the legislature required the courts to do before reaching a judgment about whether the formula application was “unjust or inappropriate.” In short, this court does not view the “guideline amount” as absolute and concludes that while the statute was designed to streamline awards and generate greater consistency, the legislature did not intend to handcuff judges in deciding a “just and appropriate” amount of temporary maintenance. The *396 “presumptive amount” is subject to the same balancing of overall equities that a permanent maintenance award requires.
Application of the Presumptive Award
Here, the court determines that the presumptive award, based on 2011 incomes ($83,564 for the husband and $23,442 for the wife), would be an estimated $19,360 annually.[2] The formula, when applied in conjunction with child support and considering the overall impact on the couple’s finances produces the following schematic:
Husband Wife
Total Income $83,564 $23,442
Payroll Tax (FICA & Medicare) -$4,689 -$1,300
Net Gross $78,875 $22,142
Proposed Temporary Maintenance -$19,360 +$19,360
Before Tax Income $59,515 $41,502
Total Est. Tax Rate[3] 10.8% 10.4%
Total Tax -$6,427 -$4,316
Net after Tax Resources before Child Support $53,088 $37,186
Child Support -$11,700 +$11,700
Net Available Resources = Total Net Income, after taxes, +/- child support, and +/- temporary maintenance
$41,388 $48,886
Under the presumptive award of maintenance, the husband has net available resources .of $41,388. The wife has $48,886, which makes her the more “net available resources” spouse, although as a matter of law she is the “less monied spouse” for purposes of calculating temporary and permanent maintenance. *397 Both of these figures, when weighed against what is listed in their respective statements of net worth, reveal that the husband will have less than what is needed to cover his annual expenses. This exercise demonstrates that the tax implications of income and other deductions make it difficult, if not impossible, to balance the resources of this family. An exact division eludes simple analysis, but the above numbers are a realistic tool for calculating the net available resources to both parties and provide a foundation for determining whether the “presumptive award” is unjust or inappropriate.
Based on this schematic, it is undisputed that payment of the presumptive amount of temporary maintenance will change the status of the husband. This factor is an appropriate one on which to base modification of the presumptive award. In the judgment of this court, the legislature never intended that the “presumptive award” would so alter the economic status of the two spouses so that when combined with the payment of child support and other tax obligations, the monied spouse would be transformed into the non-monied spouse. This court acknowledges that other courts have not considered status shifting as an independent basis to modify the presumed award under the statute. In Scott M. v Ilona M., the court noted that
“[t]he court does not believe the factor delineated in clause (q), ‘any other factor which the court shall expressly find to be just and proper,’ allows a blanket rejection of the calculation because it is simply too much money. The financial resource shift, in and of itself, is not a basis for the court to rewrite the intent of the statute. The legislature did not articulate a factor that would permit the court, as an act of equity, to simply readjust the calculation. The language unjust or inappropriate does not stand alone . . . Granting a deviation just because there is a resource shift would be inconsistent with the statutory intent. The economic intent of the statute clearly is to shift resources. Of course, how dramatic of a shift depends on the incomes and resulting financial resources of the parties” (31 Misc 3d at 363).
In this court’s view, the “unjust or inappropriate” language does stand alone. It is the first test of the “presumptive award” and the courts can only review other factors — including the clause (q) factor “catch-all” — if the court has determined that the award is “unjust and inappropriate” and is seeking to devise *398 an alternate award that is fair. The resource shifting — the transformation of one spouse from the monied to the non-monied spouse — can justify a determination that application of the presumptive award is “unjust and inappropriate.” The guidelines are focused on distribution of marital income. If the impact of the award is to reverse the financial resources available to the parties, then surely the legislature must have intended that the courts could find such a result “unjust or inappropriate” and not let it occur. This court finds that the use of the “presumptive award” in this case, based on the financial consequence as described above, is “unjust and inappropriate.”
The Adjustment of the Temporary Award
The next step is to determine what adjustment is required under the enumerated factors. Most of the statutory factors are irrelevant at this stage because the court has few undisputed facts on which to advance a judgment. There is little evidence of the standard of living of the parties established during the marriage. The parties are both in their thirties and in good health, as are their children. There is no evidence of day care expenses. There is no suggestion that either party has an untapped income potential or needs training expenses during the short-term in which temporary maintenance would be paid. There is no evidence of wasteful dissipation of marital property or any unwarranted transfers. There is no evidence of a denial of health insurance or any lost income potential. There is no evidence, at this stage, to make any judgment based on assets to be distributed after the period of temporary maintenance ends. The husband lists $106,000 in “vested interests in trusts,” but this court cannot, at this stage, decipher whether these trusts contain marital assets and what, if any, trade-offs might occur in the final distribution of assets at the conclusion of the divorce. The other major asset is a house, but according to the parties, the husband is the titled owner and he contends that it has no equity.
Other courts have criticized the legislature’s use of these criteria in establishing a temporary maintenance award at such an early stage of the case: “The bases for the majority of deviations enunciated in the statute are difficult to determine pretrial and prediscovery. At the earliest stage of the litigation (pendente lite) the court is required to consider factors some of which can only be established after a full trial and/or extensive discovery.” (Scott M. v Ilona M., 31 Misc 3d at 361.) Logic suggests that even if there are postjudgment distributions, the re *399 cipient of insufficient maintenance during the pendency of the action may find little consolation. If the recipient cannot meet expenses during the pendency, any distribution at the time of judgment may be hollow, as the recipient may have borrowed against the value of an asset to cover costs during the pendency.
The husband advances several arguments in support of a downward adjusted temporary maintenance award. He claims that he needs money to finance an expensive house and other marital obligations and that his expenses total more than $53,000 annually.[4] Under the tax scenario described above, the husband, after paying his child support ($11,700), and his income and other payroll taxes — but no temporary maintenance — would have approximately $58,658 in available resources or almost $5,000 more than his court-calculated expenses. This argument, while facially compelling, would suggest that the husband pay no temporary maintenance, because he will not have sufficient income to support his current lifestyle. But this argument ignores both the statutory dictates, and the traditional goal of maintenance, as providing some resources for the lower income earning spouse to balance off their lifestyle changes. Without temporary maintenance, the husband would have still have more than $58,000 in net available assets while his wife would have only $31,540 (income, minus payroll taxes, minus income taxes, plus $11,700 in child support). The husband argues that even with no temporary maintenance he will have less than his real anticipated expenses (he estimates at more than $62,000; the court estimates at closer to $53,000 annually) while the wife would have more than her anticipated expenses, therefore the result is a “windfall” to the wife.
This characterization paints too broad a picture. The husband remains in an expensive house that has no equity. Even so, this court is reluctant to force a move by the husband and echoes the sentiments of other courts that have been reticent to require a move, even during the pendente lite portion of the proceeding. (See Dornbusch v Dornbusch, 110 AD2d 808 [2d Dept 1985] [there is no reason he should be forced to move pendente lite].) However, this court cannot overlook the disparity between the lifestyles and expenses of the husband and wife. The wife has a rented apartment and a single vehicle. The husband has two vehicles and two motorcycles. The payment of temporary maintenance to the wife, to allow her to enjoy an expanded lifestyle, *400 even if less expensive than her husband, hardly seems to be a “windfall.”
In addition, the couple’s debts are a factor in considering temporary maintenance. The wife has $1,730 in debt in her name, while the husband has more than $54,000 (all but $7,374 is debt associated with vehicles). The husband also has an extra vehicle worth more than $11,000 which has no debt. The wife is residing in an apartment with monthly rent of $610. The husband’s monthly cost for mortgage and taxes is $1,234. Certainly, his debt service is substantially higher, but in all likelihood, this high debt cost can be mitigated by selling the unnecessary vehicles titled solely in his name. There is no evidence that the husband will pay the unpaid family debts. The husband could liquidate the unneeded vehicles, and if he wants to stay in the house, it would most likely occur through a quit claim deed without cost to him or the wife (unless she claims some equity). In short, at this time, the court declines to speculate that the husband’s offer to “pick up the debts” will cause him to pay money out of his pocket. Based on all these factors, a decision permitting the husband to pay no temporary maintenance would flaunt the statute, and turn a deaf ear to the legislative command in Domestic Relations Law § 236 (B) (5-a).
In defense of the “presumptive amount” of temporary maintenance, the wife argues that this court should consider the fact that the child support set forth in the custody and support agreement (the agreement) represents a downward deviation from that dictated by the Child Support Standards Act (CSSA). Having agreed to a reduction in child support, the wife contends that her temporary maintenance should be consistent with the “presumptive award.” This court acknowledges that the agreement provides a substantial deviation from the husband’s child support obligation. Under the CSSA formula, the statutory obligation would be 25% of his net income after deduction of payroll taxes — in this case, $19,718 annually. The agreement provides only $11,700 annually, or 60% of the CSSA total. The wife also notes that if this court awarded the presumptive amount of maintenance ($19,360) and subtracted this amount from the husband’s net-after-payroll-tax-income ($78,311), the remaining income would be $58,951 and his child support, based on that number, would be $14,737 annually or $566.80 biweekly. The husband is paying only $450 biweekly. The wife argues that even if the husband paid the entire “presumptive award,” he would still be getting a break by paying less child support than the law would otherwise require.
*401 The agreement contains an elaborate schematic for the calculation of child support and weighs a series of factors, stating that “[t]hey [the parties] have taken into consideration the factors set forth in Domestic Relations Law [§ 240 (1-b) (f) (1)-(10)] based on the joint custody, equal sharing of residential time with the children, and the consequent cost to each parent as effected by the co-parenting agreement.” The parties then acknowledged that the agreement “deviates substantially” from “the case law interpreting” the child support standards, but “both parties state they believe that the strict application of the statute, as interpreted by the above-referenced decisions, would be unjust and unfair.”
This court declines to consider the “less than CSSA standards” payment of child support as an equitable factor to warrant an alteration in the husband’s temporary maintenance. There is no statutory justification to do so. The calculation of the “guideline amount of temporary maintenance” or the “presumptive award” in the statute does not suggest that a deviation in the payment of child support — either upward or downward — is a factor to be considered in the calculation. The court declines to entertain the argument that one party has “compromised” their claims for child support in trade for equitable considerations in the calculation of temporary maintenance — the two calculations are independent at this stage of the proceeding. Also, the agreement contains other provisions that impact the husband’s finances. The agreement envisions a shared residence arrangement, with the children residing with their father half of the time. The husband also agreed to pay all the extracurricular costs for the children without contribution from the wife.
The court acknowledges that the consequences of the child support calculations — the costs to the payor and the benefits to the recipient — are legitimate factors to be considered in deciding how to allocate family resources. The court’s tax-impacted analysis, set forth in this opinion, includes child support as a cost to one parent and increased available resources to the other. However, this court will not concede that a trade-off of less child support for higher temporary maintenance is a factor in determining the temporary maintenance required by the statute.
Under these circumstances, the court analyzes several options. In his presentation to the court, the husband argued that $350 per month or $4,200 annually in temporary maintenance *402 was an appropriate deviation from the presumptive award set forth in the statute. The wife rejected this offer. Under his proposal, the following net income analysis projects as follows:
Husband Wife
Total Income $83,564 $23,442
Payroll Tax (FICA & Medicare) -$4,689 -$1,300
Net Gross $78,875 $22,142
Proposed Temporary Maintenance -$4,200 +$4,200
Before Tax Income $74,675 $26,342
Total Est. Tax Rate 10.8% 10.4%
Total Tax -$8,065 -$2,739
Net after Tax Resources before Child Support $66,610 $23,603
Child Support -$11,700 +$11,700
Net Available Resources = Total Net Income, after taxes, +/- child support, and +/- temporary maintenance
$54,910 $35,303
Under this scenario, the husband has net income of $54,910, enough to pay all his expenses, as calculated by the court. The wife has net income of $35,303, which is more than her projected expenses. However, this scenario is a drastic departure from the “presumptive award.” The temporary maintenance in this instance would revert to the “tide over the . . . needy” philosophy that the guidelines were designed to obviate. (Yecies v Yecies, 108 AD2d 813, 814 [2d Dept 1985]; Valente v Valente, 269 AD2d 389, 390 [2d Dept 2000]; Iannone v Iannone, 31 AD3d 713, 714 [2d Dept 2006] [the purpose of a pendente lite award is to “tide over the more needy party, not to determine the correct ultimate distribution”].) The court declines to consider this amount as “just and appropriate” under all the circumstances.
In the two cited cases where the court declined to apply the “presumptive award” because it was “unjust or inappropriate,” both elected to reduce the presumptive maintenance award by one third. (Scott M. v Ilona M. at 363; Martin v Buckley, 2011 *403 NY Slip Op 52235[U].) Here, the court elects a more sizable reduction. The resulting financial scenario emerges:
Husband Wife
Total Income $83,564 $23,442
Payroll Tax (FICA & Medicare) -$4,689 -$1,300
Net Gross $78,875 $22,142
Proposed Temporary Maintenance -$10,000 +$10,000
Before Tax Income $68,875 $32,142
Total Est. Tax Rate 10.8% 10.4%
Total Tax -$7,438 -$3,342
Net after Tax Resources before Child Support $61,437 $28,800
Child Support -$11,700 +$11,700
Net Available Resources = Total Net Income, after taxes, +/- child support, and +/- temporary maintenance
$49,737 $40,500
In this scenario, the husband nets slightly less than what is needed to pay for his actual expenses. He nets $49,737, when his actual expenses are just slightly over $52,000. The wife nets $40,500, which exceeds her estimated expenses of $26,000. The proposed temporary maintenance is not perfectly tuned to the circumstances of these two parties. For example, the husband, by paying the mortgage, may get a greater tax deduction and free up more cash. The court, in electing this amount, notes that the application for temporary maintenance was filed in 2011, and it is entirely possible that the parties agreed to file jointly for 2011, a factor that might scotch the tax-impact analysis set forth above. The wife may find that her six-year-old vehicle needs replacement and the cost of a newer vehicle is much more expensive. The proposed amount permits the wife, now with her two sons living in an apartment, to seek other amenities that may enhance her lifestyle, even though she does not live in a house. But, it does not assume too much. The strongest argument for this distribution is that it permits the wife to *404 receive an enhanced lifestyle while preserving the husband’s status as the more monied spouse. This court considers that adjustment — $10,000 annually or $833.33 monthly — to be reasonable under all the circumstances and the statutory command of the “q-factor” in Domestic Relations Law § 236 (B) (5-a) (e) (D (q).
This court declines to critique the state legislature for these statutory changes. In drafting this opinion, the court was forced to analyze, in perhaps greater detail than it had ever previously, a number of relevant factors in planning the financial future of a family — even on a temporary basis — and the court has had to think through the financial consequences of transferring income from one wage earner to another as part of supporting the now-divided family unit. Some of the criteria are more pertinent them others, some could be easily deleted without impacting the overall analysis.[5] In addition, this court’s reliance on clause (q) — the equity catch-all — can be criticized because it appears the court has reverted to the old “weighing of the equities” analysis and away from the more categorical analysis dictated by the guidelines. But, the legislature never intended to end the court’s search for equity and fairness. It simply wanted to create reasonable mileposts on the road to making decisions which would create greater consistency, enhance appellate review, and increase the litigants’ sense of fairness. The court’s job under the new guidelines requires greater thought and analysis and, optimistically, will lead to a more consistent and fairer result when considering the award of maintenance during the pendency of an action, as the court believes it has done in this instance.
Attorney’s Fees
In this application, the wife also seeks attorney’s fees under the relatively new attorney’s fees statute. Section 237 of the Do *405 mestic Relations Law was amended in 2010 to address the issues of interim counsel fees. It provides:
“There shall he rebuttable presumption that counsel fees shall be awarded to the less monied spouse. In exercising the court’s discretion, the court shall seek to assure that each party shall be adequately represented and that where fees and expenses are to be awarded, they shall be awarded on a timely basis, pendente lite, so as to enable adequate representation from the commencement of the proceeding.” (Domestic Relations Law § 237 [a].)
The use of the phrase “less monied spouse” in the statute is intriguing. The term is not defined by the legislature and there is no judicial definition, other than courts that use the phrase to describe the spouse who has the larger income. (See Juhasz v Juhasz, 92 AD3d 1209 [4th Dept 2012]; Eileen G. v Frank G., 34 Misc 3d 381, 385 [Sup Ct, Nassau County 2011] [“(s)he is the less monied spouse, and should not be forced to liquidate marital assets to pay for her attorney under these circumstances” (citing Wexler v Wexler, 162 AD2d 326 [1st Dept 1990])].)
Does the “less monied spouse” mean the spouse with the greater income, or the spouse with the greater “net available resources” after taxes, maintenance, and child support are paid? Counsel fees are designed to create parity in divorce litigation and to prevent a monied spouse from wearing down a non-monied spouse on the basis of sheer financial strength. (Scott M. v Ilona M. at 370, citing Rosenbaum v Rosenbaum, 55 AD3d 713, 714 [2d Dept 2008].) That court noted:
“While the purpose of counsel fees is to make sure that the monied spouse does not control by the power of the pocketbook or wallet, the court must realistically assess the available resources to each party as a result of the litigation. The court must leave the payor spouse with funds sufficient to meet their daily living expenses.” (Scott M. v Ilona M. at 371.)
But what if a court concludes that one party, although with greater “net resources available” than their spouse, still does not have sufficient resources to pay their admitted and undisputed expenses. Is he still considered the “more monied spouse?” What if undisputed facts indicate that the wife, while having less “net available resources,” still has more than enough to cover her sworn-to expenses? Under these circumstances, the legislature’s use of the term “more monied spouse” as a description of this husband seems a misnomer.
*406 In this case, after the payment of child support, maintenance as directed by the court, and of all his taxes, the husband’s status would be more accurately described as “the just barely able to be called the monied spouse.” As the record establishes, the husband still does not have sufficient resources to pay his stated — and largely undisputed — expenses including those left over from a marriage in which the family’s lifestyle exceeded their income. The “realistic assessment of available resources” in this case mirrors the analysis of the actual impact of the temporary maintenance award set forth in schematics in this opinion. As noted above, the disparity in “net available resources” for this couple, after the court awards $10,000 in annual maintenance, is approximately $9,000 using the court’s analysis — the husband has $9,000 more annually in net resources than the wife. Under this analysis, and based on the proof before this court, the husband has not rebutted the “presumption” that the wife, with less net available resources, is the “less monied spouse” under the language of the statute and entitled to an award of fees.
In determining a counsel fee award, the trial court must consider factors such as the “difficulty of the questions involved, the skill required to handle the case, specifics as to the time and labor required, the [attorney’s] experience, ability and reputation, and the customary fee charged for similar services.” (Moccia v Moccia, 82 AD3d 1064 [2d Dept 2011, Austin, J., dissenting]; see generally Matter of Ury, 108 AD2d 816 [2d Dept 1985]; Matter of Potts, 241 NY 593 [1925].)
The court reviewed the wife’s retainer agreement and finds that the amount charged by counsel is reasonable and fair and the hourly rate is not excessive. There is no evidence that this case has been over-litigated, both counsel have moved quickly to bring the dispute before the court in a direct fashion. The wife deposited a $2,500 retainer when she retained counsel. Furthermore, the court concludes that this case, apart from the temporary maintenance calculation, is not burdened with significant complications or the need for experts. Once the maintenance issue is resolved, and the house (with no equity) is agreed upon, the parties will divide the debts and the pension/ retirement accounts, and this matter should be completed.
In this court’s view, the sum of $3,000 should be fair and just payment of legal fees by the husband to the wife. This amount, when combined with the $2,500 retainer, should, in this court’s judgment, finance most, if not all, of the wife’s costs for litigat *407 ing this case, unless either party takes a recalcitrant stance in further negotiations. The $3,000 should be paid in six equal installments of $500, each due the first day of the month, commencing with the first day of the first full month after the entry of the order in this case.

. In evaluating the husband’s proposed expenses, it appears he has overestimated his tax expenses. As the scenarios in this opinion indicate, the marginal tax rate would be 10.8% and 10.4% respectively, after payment of the payroll taxes. Using these rates, assuming a standard deduction, and the child exemptions being split, the husband would have income and payroll taxes that total about $11,000. In his affidavit before the court, he alleges more than $20,000 in tax expenditures. Thus, the husband’s actual annual amount to cover expenses is closer to $53,000 and not the nearly $63,000 that he asserts in his affidavit.

. The New York State Office of Court Administration provides a temporary maintenance calculator.

. The court has used the revised rate as discussed earlier, and has reviewed tax tables. The tax rates assume the use of the standard deduction and a division of the tax exemptions for the children.

. See n 1.

. The New York City Bar Association, in its recommendation to the Law Revision Commission, noted:
“The new law has shifted the award of temporary maintenance from one based on need and preserving the status quo, to one based on income, yet certain provisions contained in the law do not — cannot—effectuate that change because they more properly belong as part of the final post-divorce maintenance determination.” (Report of New York City Bar Association to New York State Law Revision Commission, Appendix B, Proposed Amendments and Comments to Temporary Maintenance Guidelines at 7 [Oct. 2011].)