OPINION OF THE COURT
Catherine M. DiDomenico, J.
The decision and order on wife’s application is as follows:
Plaintiff wife moves by order to show cause (motion sequence No. 001) for pendente lite relief requesting an order: (1) granting her temporary custody of the subject child of this marriage G.G. (age five); (2) granting her exclusive use and occupancy of the former marital residence; (3) directing that all visits with defendant husband be professionally supervised; (4) awarding pendente lite child support; (5) awarding pendente lite maintenance; and (6) awarding plaintiff’s attorney pendente lite counsel fees and expert fees. While wife also initially requested that this divorce action proceed under a redacted caption, that application was withdrawn on the motion’s initial appearance date. Wife’s application for exclusive use and occupancy was previously granted by this court on May 31, 2016.
Defendant husband cross-moves by notice of cross motion (sequence No. 002) requesting an order: (1) setting forth a schedule for unsupervised visitation; (2) awarding pendente lite child support and maintenance in accordance with husband’s calculations; (3) permitting the defendant to collect certain rents and obtain possession of the former marital vehicle (a 2014 Mercedes GL); (4) allowing husband to deduct the payment of the mortgage from his support obligations in lieu of the payment to wife thereof; (5) setting a pretrial hearing date for the family offense aspects of this proceeding; and (6) granting husband a duty use exception for the use of his firearm during periods of on duty employment with the New York City Police Department.
*231 Factual Background
The parties were married in September of 2004 after having dated for a period of approximately three years. There is one child of this marriage, G.G. (age five). While there are currently no custodial orders pertaining to the subject child, it is undisputed that the child resides primarily with wife. Moreover, on or about January 21, 2016 this court issued a temporary order of protection against husband which directs him to “stay away” from G.G., subject to the parental access orders of this court. Husband currently has visitation with the subject child, twice a week, under the supervision of the maternal grandparents.
Husband is 38 years old. Husband is currently employed as a sergeant for the New York City Police Department. The last complete tax return provided to the court was a jointly filed return from 2014. According to this tax return, the parties claimed total wages of $161,920, which consisted of husband’s income and a state income tax refund. However, wife argues that this income is not wholly reflective of husband’s earning capacity. According to the voluminous tax information provided by both parties it appears that husband earned in the vicinity' of $188,710 in 2013, $161,920 in 2014 and $157,280 in 2015.
In addition to his income from employment, wife argues that husband commingles his funds with those of his parents, and that his parents provide him with considerable financial support. In support of this claim, wife annexes various transcriptions of alleged recorded conversations between wife and husband and wife and paternal grandmother regarding the purchase of luxury vehicles and expensive clothes made in his parents’ names. While husband admits that his paycheck is consistently deposited into a joint account with his mother, and that he co-owns assets with his father, he denies that his parents provide him with a significant amount of financial support. Husband simply claims that his parents provide him with “occasional help.”
In addition to support from his parents, wife also implies that husband must be obtaining money from a source other than his income as she alleges that husband is intending to purchase a million dollar home and has purchased an $85,000 engagement ring for his paramour. It is undisputed that husband obtains rent from an investment property located in Staten Island, New York, but he argues that the monthly mortgage relating to that property exceeds the rental income. *232 Husband denies that he obtains income from any other source than his regular employment with the police department. Husband self reports that he has attained 60 college credits and that his health is good. Wife contests this claim and argues that husband suffers from undiagnosed and untreated mental illness, including obsessive compulsive traits.
Wife is 39 years old. Wife is currently employed as an insurance underwriter by an entity known as “TCE Insurance Services Inc.” In addition to the parties’ 2014 tax return, which attributes no income to her, wife has provided the court with her 2015 “end of year” paycheck which was issued on December 31, 2015. According to this paycheck, wife earned a gross income of $17,706. Husband argues that this amount is incorrect and that she actually works both “on and off the books,” however, husband has offered no persuasive proof of these claims. In fact, in his opposition papers, husband approximates that wife earns anywhere between $15,000 and $30,000 a year, which appears consistent with wife’s documentation. Husband further claims that wife receives an unknown amount of financial support from her family. Wife self reports that she has an Associate’s degree, and that her health is good.
Decision
Temporary Maintenance
Wife seeks an award of pendente lite maintenance. As this action was commenced after October 25, 2015, this court is required to apply the new statutory mathematical formula in determining temporary maintenance awards. (See Domestic Relations Law § 236 [B] [5-a].) Pursuant to Domestic Relations Law § 236 (B) (5-a) (c), after the statutory formula is applied to the parties’ income, the calculated amount is considered the presumptive award of temporary maintenance, which shall be ordered, unless the court finds that the presumptive award would be unjust or inappropriate based upon the factors prescribed in Domestic Relations Law § 236 (B) (5-a) (h) (1).
If the court determines that the presumptive temporary maintenance award is unjust or inappropriate, thereby warranting a deviation, the statute requires that the order adjusting the presumptive award must include the amount of the unadjusted presumptive award of temporary maintenance, the factors the court considered, and the reasons the court adjusted the presumptive award. (See Domestic Relations Law § 236 [B] [5-a] [h] [2].)
*233 In determining income for the purpose of calculating temporary maintenance, the statute uses the same definition of income as set forth in the Child Support Standards Act. (See Domestic Relations Law § 236 [B] [5-a] [b] [4].) The court is directed to utilize income figures as they were, or should have been, reported oh the parties’ most recently filed tax return. (See Domestic Relations Law § 240 [1-b] [b] [5] [i]; see also Miller v Miller, 18 AD3d 629 [2d Dept 2005].) However, when determining income, the court need not rely solely on the party’s own account of his or her finances, but may, in its discretion, impute income based upon the party’s past earnings or demonstrated earning potential. (See Friedman v Friedman, 309 AD2d 830 [2d Dept 2003].) While rental income may be considered as income, it should only be considered as such after it is used to pay mortgages and expenses related to the property from which it is derived. (See Matter of Ambrose v Felice, 45 AD3d 581 [2d Dept 2007]; see also Matter of Goodman v Colena, 287 AD2d 628 [2d Dept 2001].)
The most recent (and complete) tax return provided to the court is the parties’joint return from 2014. However, the court notes that while wife admits that she is currently working, the parties’ 2014 tax return did not attribute any income to her. Moreover, the court notes that husband’s income has fluctuated from 2013 to the present. Husband argues that in 2013 he was investigating a particular case that resulted in substantial overtime that is no longer available. Husband claims that his 2015 income is more reflective of what he is currently capable of earning. When determining income, the court has authority to utilize more recent income information from a completed tax year, as that income arguably “should have” been reported on the parties’ 2015 tax return. (See Matter of Dailey v Govan, 136 AD3d 1029, 1031 [2d Dept 2016]; see also Matter of Lynn v Kroenung, 97 AD3d 822 [2d Dept 2012].) Here, the most recent income information available to the court is from husband’s 2015 W-2 and wife’s December 2015 paycheck. According to those documents, husband earned a gross sum of $157,280 and wife earned the sum of $17,706.
From these gross amounts the court is required to subtract statutory tax deductions that were “actually paid.” (See Kaufman v Kaufman, 102 AD3d 925, 927 [2d Dept 2013].) Husband’s 2015 W-2 indicates that he paid the sum of $7,347 in Social Security tax, $2,281 in Medicare tax, and $5,072 in local (NYC) tax. After deducting the above taxes from his gross *234 income of $157,280 the court finds husband’s adjusted gross income for purposes of the calculations herein to be $142,580. Wife’s end of year paycheck indicates that she paid the sum of $1,098 in Social Security tax, $257 in Medicare tax, and $203 in local (NYC) tax. After deducting the above taxes from her gross income of $17,706 the court finds wife’s adjusted gross income for purposes of the calculations herein to be $16,148.
Calculations
Under the recently passed temporary maintenance guidelines, statute the court is required to make three calculations using the parties’ annual incomes. The direction to utilize either the first or second calculation is dependent upon whether the spouse paying maintenance (the “payor spouse”) is also the spouse required to pay child support. The presumptive award of temporary maintenance shall be the lower of either the first or second calculation (whichever applies), as compared to the third calculation.
In the present case, husband is the party obligated to pay both maintenance and child support, thus, the first calculation applies. For the first calculation, the court is required to subtract 25% of the payee’s income from 20% of the payor’s income. Here, wife’s adjusted income is $16,148 and husband’s adjusted income is $142,580. After applying the parties’ respective incomes with the above arithmetic, the court finds that the first calculation results in an award of $24,479 a year.
For the second calculation, the court is required to add together the payor’s income and the payee’s income and multiply the combined sum by 40%. The payee’s income is then subtracted from this figure. Here, the parties’ combined income is $158,728. Multiplying this figure by 40%, the calculated figure is $63,491. When wife’s income of $16,148 is subtracted from the combined amount the court finds that the second calculation results in the sum of $47,343 a year.
As the court is directed to utilize the lower of the two calculations, the presumptive amount of guidelines maintenance is $24,479 a year, $2,040 a month, or $942 biweekly. Accordingly, husband is hereby directed to pay the biweekly sum of $942 directly to wife. The first such payment shall occur on Wednesday, July 20, 2016 and shall continue every other Wednesday until further court order or the signing of a judgment of divorce.
*235 Child Support
In addition to her request for maintenance, wife requests an award of child support for the one subject child of this marriage. As indicated above, there are no custodial orders in place for this subject child, however it is undisputed that the child resides primarily with her mother for the purposes of calculating child support.
The Child Support Standards Act (CSSA) (Domestic Relations Law § 240 [1-b]) presumptively results in the correct amount of child support to be awarded to the custodial parent. When calculating pendente- lite child support the court may use the Child Support Standards Act as guidance in fashioning an award, however it is not required to apply those guidelines to a temporary award. (See Eckstein v Eckstein, 251 AD2d 537 [2d Dept 1998]; see also George v George, 192 AD2d 693 [2d Dept 1993]; Nordgren v Nordgren, 237 AD2d 498 [2d Dept 1997].) However, when sufficient financial information is available to the court, it is preferable to apply the CSSA guidelines. (See Davydova v Sasonov, 109 AD3d 955 [2d Dept 2013].) When calculating child support there is currently a statutory child support cap of $143,000 of combined parental income, however, the court has authority to exceed this amount where appropriately supported by the record. (See Matter of Keith v Lawrence, 113 AD3d 615 [2d Dept 2014].)
Simultaneous with the passage of the new temporary maintenance statute, the legislature also amended the Domestic Relations Law and the Family Court Act to indicate that prospective payments of maintenance shall be subtracted from the payor’s income, and then added to the payee’s income before child support is calculated. (See Domestic Relations Law § 240 [1-b] [b] [5] [iii].) However, these amendments were made effective for cases filed on or after January 26, 2016. Accordingly, in order to determine the applicability of the new laws, the court must look to the commencement date of this action. As the present action for divorce was commenced by plaintiff wife on January 12, 2016, the new law is inapplicable. (See R.I. v T.I., 51 Misc 3d 1215[A], 2016 NY Slip Op 50664[U] [Sup Ct, Kings County 2016].)
Under the law as it existed when this action was commenced, when calculating temporary child support, as opposed to a final award, the court is not required to deduct a contemporaneous award of maintenance as that award is prospective in nature. (See Lueker v Lueker, 72 AD3d 655 [2d Dept 2010]; see also *236 Krantz v Krantz, 175 AD2d 863 [2d Dept 1991]; Lenigan v Lenigan, 159 AD2d 108 [3d Dept 1990].) Moreover, prospective maintenance payments to be received by wife are not to be included as wife’s income when calculating child support. (See Lee v Lee, 18 AD3d 508 [2d Dept 2005]; see also Shapiro v Shapiro, 35 AD3d 585 [2d Dept 2006]; Matter of Krukenkamp v Krukenkamp, 54 AD3d 345, 346 [2d Dept 2008] .)
Accordingly, using the same income figures as used for the temporary maintenance calculations herein, the parties’ combined parental income for the purposes of calculating child support amounts to $158,728. As this amount exceeds the child support standards cap of $143,000 the court is required to consider the record and the factors set forth in Domestic Relations Law § 240 (1-b) (f) when determining how, if at all, the income above the cap should be considered. (See Bono v Bono, 127 AD3d 905 [2d Dept 2015].) Here the court has considered, the enumerated factors and finds that the record does not evidence an enhanced standard of living, special needs, or any other special circumstances which would require the utilization of income above the child support cap. Accordingly, the court will utilize the statutory cap of $143,000 when determining husband’s child support obligation. (See Weitzner v Weitzner, 120 AD3d 1406 [2d Dept 2014].)
As there is one subject child, the correct CSSA percentage is 17%. Seventeen percent of $143,000 is $24,310 which amounts to the parties’ combined annual child support obligation. Of this combined amount husband is responsible for 90% and wife is responsible for 10% (pro rata based upon the parties’ respective incomes as compared to their combined income). Accordingly, husband’s child support obligation under the CSSA guidelines is 90% of $24,310, which amounts to $21,879 a year, $1,823 a month, or $842 biweekly. Accordingly, husband is hereby ordered to pay the sum of $842 biweekly in conjunction with the maintenance payment schedule set forth herein, commencing on July 20, 2016.
Retroactivity
The child support and maintenance awards herein are retroactive to the service of wife’s motion. (See Signorelli v Signorelli, 50 AD3d 772 [2d Dept 2008].) Husband is entitled to a credit for interim maintenance and child support payments ordered by this court. (See Schack v Schack, 128 AD3d 941 [2d Dept 2015]; see also Pascale v Pascale, 226 AD2d 439 [2d Dept 1996].) Husband is also entitled for a credit for any *237 voluntary support payments made to wife, but not voluntary payments for the benefit of the child. (See LiGreci v LiGreci, 87 AD3d 722 [2d Dept 2011]; Heiny v Heiny, 74 AD3d 1284 [2d Dept 2010]; see also Mayeri v Mayeri, 220 AD2d 647 [2d Dept 1995].) These credits shall include any payments made to third parties relating to the mortgage where wife resides, or wife’s monthly expenses such as utilities. Said unallocated payments shall be considered 50% payments of maintenance and 50% payments of child support for purposes of retroactivity. (See Yunis v Yunis, 94 NY2d 787 [1999].)
Wife’s application for support was served on or around January 21, 2016. Accordingly, since wife’s application was initially filed approximately six months before the first support payment mandated herein, husband owes the sum of $12,240 in temporary maintenance arrears ($2,040 x 6 months) and $10,938 in temporary child support arrears ($1,823 x 6 months). By interim court order dated March 15, 2016, husband consented to pay “all carrying charges (gas electric mortgage, taxes, Verizon, cable, car insurance etc.)” during the pendency of this motion, in lieu of paying a sum certain to wife.
As neither party has clearly indicated the exact amounts paid by husband since the filing of the motion such that the court can award him the appropriate credits, the issue of retroactivity cannot be resolved upon the parties’ submissions alone. Accordingly, plaintiff wife is hereby directed to settle an order on notice to defendant husband’s counsel indicating the amount of arrears owed, less any credits awarded to husband in accordance with this decision, within 20 days. Husband shall have an opportunity of 20 days from receipt of this proposed order to submit a counter order. In the event that the issue of retroactivity cannot be resolved on these additional submissions, the issue of retroactivity shall be referred to trial where evidence can be offered regarding the amount of credits owed to husband for the payment of household expenses versus the amount of arrears owed. Once an amount of arrears has been established, husband shall be required to pay an additional sum of $400 a month on top of his support obligations towards retroactive arrears, until said arrears are paid in full.
Carrying Charges and Expenses
The awards of temporary maintenance and child support herein are intended to be all inclusive. (See Woodford v Woodford, 100 AD3d 875 [2d Dept 2012]; see also Harris v *238 Harris, 97 AD3d 534 [2d Dept 2012].) The recipient of guidelines maintenance and child support is required to pay all of his or her own reasonable expenses including, but not limited to, any mortgage or rent, and all carrying charges, after receiving the amount awarded. (See Khaira v Khaira, 93 AD3d 194 [1st Dept 2012]; see also Francis v Francis, 111 AD3d 454 [1st Dept 2013].) Accordingly, upon the actual receipt of the child support and maintenance payments awarded herein, wife is hereby directed to pay the mortgage, utilities and all carrying charges associated with the home where she resides together with all of her own personal expenses, pendente lite. Husband is hereby ordered to cooperate with any reasonable request by wife to switch bills over to her name or authorize the payment of the same. Said requests are to be made through counsel. In accordance with this ruling, husband’s application to pay the mortgage relating to the former marital home in lieu of maintenance (or as a deduction therefrom) is hereby denied: Nothing in this ruling compels wife to remain in the former, marital home. Accordingly, husband’s maintenance payments cannot be bound to that property and must be paid to wife directly.
Child Care and Unreimbursed Medical Expenses
Wife requests an order directing husband to pay 100% of child support add-ons including educational expenses and childcare expenses. That application is granted, in part. It is well established that the cost of reasonable and necessary un-reimbursed medical and childcare expenses are to be split on a pro rata basis to be prorated in the same proportion as each parent’s income is to the combined parental income. (See Goldberg v Goldberg, 98 AD3d 944 [2d Dept 2012]; see also DiFiore v DiFiore, 87 AD3d 971 [2d Dept 2011].) For the reasons set forth at length above, the court has determined that the pro rata allocation pursuant to the CSSA guidelines is 90% to husband and 10% to wife. Therefore, husband shall have an obligation to pay his 90% share of any reasonable and necessary medical or childcare bill presented to him, or his counsel, within 20 days of receipt. (See Matter of Ripley v Valencia, 136 AD3d 831 [2d Dept 2016].)
Counsel Fees
Wife seeks an award of pendente lite counsel fees in the amount of $100,000. In his opposition papers husband acknowledges that he is the monied spouse in this action and consents to a reimbursement of wife’s initial retainer ($7,500), but *239 opposes any additional award of counsel fees. Pursuant to Domestic Relations Law § 237 (a), a lawyer who represents a non-monied spouse may seek attorney’s fees from the monied spouse in a divorce action. (See O’Connor v O’Connor, 89 AD3d 703, 704 [2d Dept 2011].) Effective October 12, 2010, Domestic Relations Law § 237 (a) (5) creates a rebuttablé presumption that counsel fees shall be awarded to the less monied spouse.
An award of attorney’s fees will generally be warranted where there is a significant disparity in the financial circumstances of the parties. (See Chesner v Chesner, 95 AD3d 1252, 1253 [2d Dept 2012].) The purpose of Domestic Relations Law § 237 (a) is to redress the economic disparity between the monied spouse and the non-monied spouse. An award of interim counsel fees under Domestic Relations Law § 237 is intended to allow the non-monied spouse to litigate the action on an equal footing. (See Prichep v Prichep, 52 AD3d 61 [2d Dept 2008].)
In support of her application, wife annexes a copy of her attorney’s retainer agreement, together with billing documentation regarding counsel fees incurred up until March of 2016. Wife has paid her attorney an initial retainer of $7,500 in relation to this divorce proceeding, and appears to have replenished that retainer at least once. Wife’s attorney charges an hourly rate of $350 which is within the normal range for experienced matrimonial attorneys in this community. To the date of wife’s opposition to husband’s cross motion she had incurred approximately $31,891 in legal fees. As of March 28, 2016 wife owed her attorney the sum of $8,538 in unpaid fees. Wife’s attorney approximates that a significant amount of time will be needed to bring the case to a resolution as he intends on conducting considerable nonparty discovery to clarify husband’s financial situation. Wife’s attorney further contends that this matter will continue to grow increasingly expensive as the parties have been unable to resolve the issues of custody and visitation, which will likely result in a protracted trial. Moreover, the court notes that husband seeks (via cross motion) a pretrial family offense hearing, which will add to the considerable legal fees already incurred during this action.
When calculating child support and maintenance the Domestic Relations Law mandates the court to consider the parties’ respective incomes as they were, or should have been, reported on their most recently filed tax returns. However, when considering a counsel fee application the court has discre *240 tion to consider the totality of the parties’ financial situations including access to assets. (See Karg v Kern, 125 AD3d 527 [1st Dept 2015]; see also Evans v Evans, 48 AD3d 322 [1st Dept 2008]; Landau v Landau, 258 AD2d 508 [2d Dept 1999].)
Based only upon husband’s income from employment it is clear that he earns considerably more than wife. However in addition to his base income, a review of husband’s statement of net worth indicates that he also has access to a pension of unknown value, and a deferred compensation plan worth approximately $237,777. While a portion of these assets are marital in nature, husband began working for the police department prior to the marriage, and thus these assets have a separate property component. In addition to income and assets, it is clear that husband has been commingling his funds with those of his parents, and that he has been receiving some measure of financial support from them. While it appears that wife may also be receiving financial support from her family, the nature and amount of that support is unclear, and nothing in the record even suggests that the support received by wife would significantly change the financial situation of the parties.
Based only upon the financial information provided, wife has established that husband is the monied spouse in this action, and is therefore subject to the presumption of counsel fees. (See Khaira v Khaira, 93 AD3d 194 [1st Dept 2012].) However, as wife has seemingly been able to contribute to her legal bills during the course of this action (she currently owes $8,538 out of a total bill of $31,891), and has been awarded a considerable amount of maintenance and child support herein, the court hereby determines that wife is not without means to contribute to her own attorney’s fees.
Accordingly, under the totality of the circumstances presented, and after considering the parties’ respective incomes, financial obligations, the amount of work already concluded, and the issues reasonably anticipated in the future, wife is hereby awarded counsel fees in the amount of $16,000 representing a 50% reimbursement of wife’s counsel fees incurred to the date of this application. (See Domestic Relations Law § 237 [a]; see also Chaudry v Chaudry, 95 AD3d 1058 [2d Dept 2012]; Suppa v Suppa, 112 AD3d 1327 [4th Dept 2013].) The court also awards an additional sum of $18,000 as a contribution towards wife’s reasonably anticipated prospective legal fees in this matter. (See Kaplan v Kaplan, 28 AD3d 523 [2d Dept *241 2006]; see also Feinstein v Merdinger, 305 AD2d 115 [1st Dept 2003].)
Husband is hereby directed to pay the first counsel fee award herein ($16,000) within 30 days of service of this decision and order with notice of entry. The second sum awarded herein ($18,000) must be paid within 60 days of service. If he so desires, husband is hereby authorized to access his deferred compensation account for the limited purpose of paying the counsel fees awarded herein, however, if he chooses to do so, that withdrawal, together with any fees or penalties associated therewith, will be attributed to husband’s share of that marital asset. This award does not preclude future applications for counsel fees, if appropriate, at or before the time of trial.
Miscellaneous
Husband’s application regarding parental access shall be addressed by the ongoing orders of this court. Husband’s application for an expedited hearing on wife’s family offense petition shall be addressed at the compliance conference in this action which has been previously scheduled for September 1, 2016. Husband’s applications regarding a duty use exception for his firearms and possession of the parties’ Mercedes were previously ruled upon by this court. Wife’s application for expert fees is denied at this time, without prejudice to renewal upon the completion of depositions and document discovery in this action. All other issues raised either in wife’s motion, or husband’s cross motion, not specifically addressed herein, or previously resolved or withdrawn, are hereby referred to the trial of this action.